# United States Court of Appeals

## For the First Circuit

No. 18-1287

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS RODRIGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]
[Hon. Lincoln D. Almond, U.S. Magistrate Judge]

Before

Barron, Circuit Judge,
Souter,[*] Associate Justice,
and Selya, Circuit Judge.

William T. Murphy on brief for appellant.
Stephen G. Dambruch, United States Attorney, and Donald C. Lockhart, Assistant United States Attorney, on brief for appellee.

March 26, 2019

---

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA**, **Circuit Judge**.   Defendant-appellant Carlos Rodriguez claims that the district court committed reversible error when it relied on previously excluded evidence to find that he violated a condition of his supervised release.  He also claims that the district court had insufficient evidence to find a second violation.  Concluding, as we do, that any error was harmless and that the evidence was sufficient to sustain both findings, we affirm.

We briefly rehearse the relevant facts and travel of the case.  On February 10, 2011, the defendant entered a guilty plea to one count of distribution of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1).  The district court imposed an 84-month incarcerative term, to be followed by a three-year supervised release term.  The defendant completed his prison sentence and began his supervised release.

On May 16, 2017 (roughly nine months into his supervised release term), the defendant submitted a urine sample to his probation officer.  The sample tested positive for amphetamines. Even though the defendant denied using amphetamines, a follow-up test confirmed their presence.

On August 22, 2017, two detectives employed by the Providence, Rhode Island police department were in an unmarked car, looking for street-level narcotics activity.  They observed what appeared to be an ongoing drug deal.  When the participants

drove away, both of their vehicles were followed by police officers. The detectives stopped one car and asked the driver, later identified as Jessica Thibault, to exit her vehicle. Thibault immediately volunteered, "it's in my bra" and proceeded to retrieve six bags of heroin from her bra. Other officers stopped the second car and arrested the defendant (who was driving). They seized a set of keys and $100 in cash from his person.

Relying in part on information supplied by Thibault, police officers located what they believed to be the defendant's residence: an apartment on Covell Street. Their suspicions were bolstered when they saw the defendant's name on the mailbox assigned to the third-floor flat. Using a key found on the defendant's person, the officers entered the apartment and conducted a protective sweep. They saw various items of drug paraphernalia in plain view.

The detectives then sought and obtained a warrant to search the apartment. The search revealed a potpourri of drugs (including cocaine, heroin, marijuana, and alprazolam), together with additional drug paraphernalia. The search also revealed several items linking the defendant to the apartment, such as a utility bill in the defendant's name and photographs of the defendant with two children.

A federal probation officer was monitoring the defendant's supervised release, and the police told her what had happened. In short order, the probation officer sought and received a federal warrant for the defendant's arrest. The associated complaint charged the defendant with two separate violations of supervised release conditions: possession of narcotics with intent to distribute (count 1) and unlawful use of amphetamines (count 2). It is undisputed that these acts, if proved, would violate conditions of the defendant's supervised release.

On November 2, 2017, the defendant appeared before a magistrate judge for a supervised release revocation hearing. See Fed. R. Crim. P. 59. The government offered testimony from one of the Providence police detectives who had witnessed the drug deal and from the probation officer. The detective testified as to what he had seen during the August 22 incident and described this observed behavior as consistent with street-level narcotics activity. He also described the search of the apartment and what it had revealed. The magistrate judge also allowed the detective to testify, over objection, about out-of-court statements made by Thibault immediately after the incident, reserving an ultimate decision as to admissibility.

The probation officer's testimony was directed mainly to count 2. She testified that the defendant had provided a urine

sample that tested positive for amphetamines. Some of her testimony, though, related to count 1: she confirmed that she had made home visits at the defendant's residence on Covell Street, where the defendant lived with his girlfriend. Her most recent home visit took place in July of 2017.

Following the close of evidence and the submission of post-hearing memoranda, the magistrate judge issued a report and recommendation (R&R). See Fed. R. Crim. P. 59(b)(1). In it, the magistrate judge sustained the defendant's hearsay objection and — with one exception — struck Thibault's out-of-court statements from the record. The exception, though, was significant: the magistrate judge ruled that Thibault's spontaneous "it's in my bra" utterance was independently admissible as a statement against interest, see Fed. R. Evid. 804(b)(3), and considered that statement in gauging the sufficiency of the evidence on count 1. Having configured the record, the magistrate judge concluded that the government had proven the violations charged in both counts by preponderant evidence and recommended revocation of the defendant's supervised release. He further recommended the maximum 24-month sentence, to be followed by a new two-year term of supervised release.

The defendant filed objections to the R&R, see Fed. R. Crim. P. 59(b)(2), challenging the magistrate judge's findings and recommendations as to both counts. The district court held a non-

- 5 -

evidentiary hearing on March 23, 2018. See Fed. R. Crim. P. 59(b)(3). After considering the arguments of counsel, the court — on de novo review, see id. — adopted the R&R; subject, however, to remarks that the court had made from the bench. The court's ultimate findings were that the defendant, on one occasion, had possessed narcotics with intent to distribute and, on another occasion, had unlawfully ingested amphetamines. Based on these findings, the court held that the defendant had twice violated the conditions of his supervised release. It proceeded to sentence the defendant to an 18-month term of immurement, to be followed by a new four-year term of supervised release. This timely appeal ensued.

We review a district court's decision to revoke supervised release for abuse of discretion. See United States v. Whalen, 82 F.3d 528, 532 (1st Cir. 1996). We are mindful, though, that a material error of law always amounts to an abuse of discretion. See United States v. Vargas-Dávila, 649 F.3d 129, 130 n.1 (1st Cir. 2011).

Here, the defendant submits that the district court erred in ruling that he violated the conditions of his supervised release. His challenge extends to both counts, and we discuss them separately.

We start with count 1 and, specifically, with the defendant's assertion that the district court erred in relying

- 6 -

upon certain out-of-court statements previously excluded as hearsay by the magistrate judge. The government contends that we should review this claim only for plain error, insisting that the defendant failed to raise it below.[1]

The government's contention is founded on an uncontroversial premise. It is black-letter law that when a party fails to make a contemporaneous objection in the trial court, appellate review of the forfeited objection is limited to plain error. See Whalen, 82 F.3d at 531 (reviewing claims in supervised release revocation proceeding for plain error when appellant had not raised them below). Here, however, there is a rather large fly in the ointment: to trigger a forfeiture (and, thus, plain error review), the aggrieved party must have had a fair opportunity to object. See Fed. R. Crim. P. 51(b). And in the interest of finality, that opportunity must have arisen prior to the trial court's entry of judgment. See United States v. Sepúlveda-Contreras, 466 F.3d 166, 171 (1st Cir. 2006). The mere possibility that an aggrieved party might be able to file a motion for reconsideration is not the functional equivalent of an opportunity

---

[1] Review for plain error is not appellant-friendly: it requires an appellant to show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

to object and, thus, does not normally pave the way for plain error review.  See United States v. Burrell, 622 F.3d 961, 966 (8th Cir. 2010).

In this case, the defendant lodged contemporaneous objections to Thibault's hearsay statements before the magistrate judge (and, indeed, succeeded in securing a ruling excluding the challenged statements).  The subsequent hearing before the district court was a non-evidentiary hearing, and the government identifies only a single point at which the defendant could have perceived the district court's alleged error.  That point arose when the court, in issuing its decision ore tenus, stated that "it's clear . . . that [the magistrate judge] primarily relied on Ms. Thibault's statements with respect to the evidence of what occurred on the street and that transaction."[2]  Since this statement was part and parcel of the court's final decision, the defendant had no realistic opportunity to object before the entry of judgment.  We hold, therefore, that the defendant's claim of error was not forfeited and that the plain error standard of review does not pertain.  See Sepúlveda-Contreras, 466 F.3d at 171 (holding plain error review inapposite when appellant had no

---

[2] To be sure, the district court had made earlier references to what Thibault said, but it is undisputed that the parties reasonably understood those references to refer to the statement ("it's in my bra") that the magistrate judge allowed into evidence as a statement against interest.

reasonable opportunity to object to claimed error below); cf. Whalen, 82 F.3d at 531 (applying plain error standard when supervised release challenge not raised below).

Having established that abuse of discretion is the appropriate standard of review, we turn to the merits of the defendant's argument. The challenged evidence — the out-of-court statements by Thibault — is classic hearsay. See Fed. R. Evid. 801(c) (defining hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement"). The government concedes, at least implicitly, that no exception to the hearsay rule applies. Finally, there does not appear to be any doubt that the district court, which explicitly referred to multiple "statements" from Thibault, relied upon the hearsay evidence — the same evidence that the magistrate judge already had excluded.

To be sure, hearsay evidence may be admissible in supervised release proceedings because, in such a context, the defendant does not have a full Sixth Amendment right to confront adverse witnesses. See United States v. Fontanez, 845 F.3d 439, 443 (1st Cir. 2017). Instead, the defendant has only a limited right of confrontation, which requires a court to balance the right to confront witnesses against whatever good cause may exist for relaxing customary principles of confrontation. See United States

v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005); see also Fed. R. Crim. P. 32.1(b)(1)(B)(iii), (2)(C).  In conducting this tamisage, the court must "weigh both the apparent reliability of the hearsay evidence and the government's proffered reason for not producing the declarant."  Fontanez, 845 F.3d at 443.

Here, the government's only argument for not producing Thibault as a witness was that she was likely unavailable.  The magistrate judge concluded that this explanation was wholly speculative and that, therefore, the government had not shown good cause for failing to present Thibault's direct testimony.  Accordingly, the magistrate judge found an abridgement of the defendant's limited confrontation right and struck Thibault's hearsay statements from the record (with the one exception limned above).  The government filed no objection to this ruling and, thus, it has become the law of the case.  See Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992) (holding that failure to object to magistrate judge's ruling waives review by district judge); see generally United States v. Matthews, 643 F.3d 9, 12-13 (1st Cir. 2011) (stating that legal decisions made at one stage of a criminal or civil proceeding remain the law of the case throughout the litigation, unless modified or overruled by a higher court).  It follows that — as the defendant has argued — the district court abused its discretion in relying upon the previously excluded hearsay statements in formulating its decision.

- 10 -

This conclusion does not end our inquiry. Not every trial error requires reversal of the judgment, and it remains for us to determine whether the error here was harmless. See United States v. Melvin, 730 F.3d 29, 38 (1st Cir. 2013).

Depending on the circumstances, either of two different standards may apply in determining whether an error is harmless. See id. at 39. If the error is of constitutional dimension, it can be harmless only if "the government [carries] the burden of proving beyond a reasonable doubt that the error did not affect the defendant's substantial rights." United States v. Vázquez-Rivera, 407 F.3d 476, 489 (1st Cir. 2005) (citing Chapman v. California, 386 U.S. 18, 24 (1967)). If, however, the error is not of constitutional dimension, a less rigorous standard obtains: in such an event, the error is harmless as long as the reviewing court determines "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." United States v. Sasso, 695 F.3d 25, 29 (1st Cir. 2012) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). Once again, the government bears the devoir of persuasion. See Sepúlveda-Contreras, 466 F.3d at 171.

In the case at hand, the discerned error is not of constitutional dimension. Consequently, the less rigorous

<u>Kotteakos</u> standard pertains.  We turn, then, to the application of this standard.

Harmless error analysis necessarily hinges on the facts and circumstances of a given case.  Thus, any such analysis "must be made in the context of the case as gleaned from the record as a whole."  <u>United States</u> v. <u>Meserve</u>, 271 F.3d 314, 330 (1st Cir. 2001) (quoting <u>DeVasto</u> v. <u>Faherty</u>, 658 F.2d 859, 863 (1st Cir. 1981)).  It follows that "a harmlessness determination demands a panoramic, case-specific inquiry considering, among other things, the centrality of the tainted material, its uniqueness, its prejudicial impact . . . and any telltales that furnish clues to the likelihood that the error affected the factfinder's resolution of a material issue."  <u>United States</u> v. <u>Sepulveda</u>, 15 F.3d 1161, 1182 (1st Cir. 1993).

It is nose-on-the-face plain that the district court's improper reliance on previously excluded hearsay statements bore only on its finding that the defendant had illegally trafficked drugs (count 1).  The record makes manifest, though, that the court also relied on a plethora of admissible evidence to support that finding.  Such evidence included the detective's testimony as to what he observed, Thibault's spontaneously uttered statement against interest, the testimony and materials linking the defendant to the Covell Street apartment, and the contents of that apartment discovered during the warrant-backed search.  Relatedly,

the district court — relying exclusively on admissible evidence — found that the government had established the defendant's control over the apartment.[3]   The short of it is that the evidence supporting the count 1 finding, quite apart from the previously excluded hearsay statements, was overwhelming.

The government must prove a supervised release violation by a preponderance of the evidence.  See Fontanez, 845 F.3d at 442.  Here, we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole," that the district court's finding of a violation on count 1 "was not substantially swayed" by any error in treating inadmissible evidence as admissible.  Kotteakos, 328 U.S. at 765.  The upshot is that the defendant wins the battle but loses the war.  We conclude that even though the district court erroneously relied on Thibault's previously excluded hearsay statements, its error was manifestly harmless.  See, e.g., Fontanez, 845 F.3d at 445 (holding erroneous admission of hearsay evidence in revocation proceeding harmless because that evidence played "infinitesimal

---

[3] In support, the district court noted that the defendant's name was emblazoned on the mailbox for the apartment; that the defendant had in his possession a key that unlocked the door to the apartment; that pictures of the defendant and a utility bill bearing his name were found in the apartment; and that the defendant's probation officer had made home visits to him at that locus.

role" in finding of violation). Accordingly, the district court's finding of a violation on count 1 must stand.

The defendant's remaining claim of error relates to count 2. He asserts that there was insufficient evidence on which to base a finding that he intentionally used amphetamines. This assertion lacks force.

We review challenges to the sufficiency of the evidence de novo. See Rondeau, 430 F.3d at 149. In the supervised release context, we "tak[e] the facts in the light most favorable to the government, to determine whether there was proof, by a preponderance of the evidence," that the defendant violated a supervised release condition. Id.

We discern no error. To find a supervised release violation, the district court need not point to direct evidence but, rather, may rely on reasonable inferences drawn from the evidence. See United States v. Marino, 833 F.3d 1, 8 (1st Cir. 2016). The inferences so drawn "need not be compelled but, rather, need only be plausible." United States v. Nuñez, 852 F.3d 141, 146 (1st Cir. 2017)

In this case, the defendant argues that a failed drug test, without more, is insufficient to show that he intentionally used an illegal drug. To buttress this argument, he suggested to the magistrate judge that it was possible that one of his friends slipped amphetamines into his drink. But there are possible

explanations for virtually any datum, and something more concrete is needed to remove a bare possibility from the realm of conjecture. Here, the defendant identifies nothing in the record that lends the slightest support to the wholly speculative possibility that he conjures — and the magistrate judge, charged with finding the facts, was not persuaded. Instead, the magistrate judge drew an inference — eminently reasonable, we think — that the defendant had deliberately engaged in the unlawful use of amphetamines and, thus, had violated a supervised release condition. On de novo review, see Fed. R. Crim. P. 59(b)(3), the district court reached the same conclusion.

So do we. It is perfectly reasonable for a factfinder to conclude that a defendant who was found to have ingested a particular drug has — at least in the absence of any evidence tending to support a contrary explanation — done so deliberately. See United States v. Brennick, 337 F.3d 107, 111 (1st Cir. 2003) (holding positive drug test sufficient to show that defendant possessed illegal drugs in violation of supervised release). We therefore uphold the district court's finding that the defendant committed the violation charged in count 2.

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed.**