# United States Court of Appeals
## For the First Circuit

No. 18-1629

UNITED STATES OF AMERICA,

Appellee,

v.

HÉCTOR GARCÍA-CARTAGENA, a/k/a/ Arana,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Franco L. Pérez-Redondo, Research & Writing Specialist, with whom Eric A. Vos, Federal Public Defender, and Vivianne M. Marrero-Torres, Assistant Federal Public Defender, Supervisor, Appeals Section, were on brief, for appellant.
Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

March 6, 2020

THOMPSON, **Circuit Judge**.  When most federal prisoners get out of prison, their first few years of freedom are supervised (by the United States Probation Department) and conditional:  among other things, they may not commit another "Federal, State, or local crime."  18 U.S.C. § 3583(d).  If they do commit a new crime, even if they're not convicted (i.e., found guilty beyond a reasonable doubt after a full-dress trial or plea), a federal district court may find they more-likely-than-not committed it, revoke their supervised release, and send them back to prison.  So it was for Hector García-Cartagena — who in November 2016, after a seven-year stint in federal prison, began his eight-year term of supervised release.  Within a few months, he was arrested twice:  first for possessing drugs with intent to distribute, then for domestic abuse under Puerto Rico law.  Commonwealth prosecutors dropped the most serious charges in Puerto Rico court (where he pled guilty to lesser offenses).  Nonetheless, the federal district judge found he committed a "crime of violence" and a "controlled substance offense" (as defined in the federal sentencing guidelines) — "Grade A" violations of supervised release carrying the stiffest guideline penalties, see U.S.S.G. § 7B1.1(a)(1) — and sentenced García to three more years in prison.

On appeal, García challenges the "Grade A" label. The government defends it. To resolve their dispute (since our on-point case law is murky, and other circuits have split on the

issue), we clarify the approach courts should use to determine if a crime is a "controlled substance offense" or a "crime of violence" under § 7B1.1(a) — the same "categorical approach" we've used to identify whether state or federal law crimes fit the bill in other contexts, with one caveat: once the court identifies a "crime of violence" or "controlled substance offense," it may consider any reliable evidence (subject to the flexible constraints applicable in revocation hearings) to decide if the defendant committed that crime. With that framework in hand, we affirm García's sentence.

**LEGAL LANDSCAPE**

Let's start with the basics. To recommend sentences for supervised release violators, the United States Sentencing Guidelines rank new crimes with letter grades (A, B, and C). The highest grade (A), with the highest (recommended) range of sentences, is reserved for new criminal "conduct constituting [ ] a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense," or falls within two other classes of serious crimes not relevant here. U.S.S.G. § 7B1.1(a)(1). Under § 4B1.2:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
> (1) has as an element the use, attempted use, or

- 3 -

threatened use of physical force[1] against the person of another [the "force clause"], or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c) [the "enumerated offense" clause].

(b) The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2; see § 7B1.1, cmt. nn. 2, 3 (stating that "crime of violence" and "controlled substance offense" are "defined in § 4B1.2 (Definitions of Terms Used in Section 4B1.1)").

Those terms appear throughout the guidelines — not only in § 7B1.1(a)(1), but also in various other provisions that increase a defendant's recommended sentence based on "crime[s] of violence" and "controlled substance offense[s]" and also incorporate the definitions in § 4B1.2. To apply those other provisions, we use the "categorical approach" minted in Taylor v. United States, 495 U.S. 575, 588 (1990) (holding that a similar definition of "violent felony" in the Armed Career Criminal Act, or ACCA, "requires the trial court to look only to the fact of

_____

[1] "Physical force" means "violent force": "force capable of causing physical pain or injury to another person." United States v. Martinez, 762 F.3d 127, 137 (1st Cir. 2014) (quoting Johnson v. United States, 559 U.S. 133, 140 (2010)).

conviction and the statutory definition of the prior offense"). See, e.g., United States v. Ramos-González, 775 F.3d 483, 504 (1st Cir. 2015); United States v. Dávila-Félix, 667 F.3d 47, 56 (1st Cir. 2011); United States v. Bryant, 571 F.3d 147, 157 (1st Cir. 2009) (all applying § 4B1.1's "Career Offender" enhancement for defendants convicted of a "crime of violence" or "controlled substance offense" for the third time); see also United States v. Martínez-Benítez, 914 F.3d 1, 2 (1st Cir. 2019) (ditto for § 2K2.1(a)(4), increasing the guideline sentence for defendants who commit firearms offenses with a prior conviction for a "controlled substance offense" or "crime of violence"). We've used the approach to characterize both past convictions and crimes "freshly committed," United States v. Bell, 966 F.2d 703, 704–06 (1st Cir. 1992), even when the defendant wasn't convicted of the covered offense, see United States v. Gary, 74 F.3d 304, 316–17 (1st Cir. 1996) (using the categorical approach to decide that an offense was a "crime of violence" under § 4B1.4(b)(3)(A), which increases a defendant's guideline sentence if he possessed a firearm "in connection with . . . a crime of violence" or "controlled substance offense").

Although Taylor interpreted the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), we adopted its approach early on to classify "crime[s] of violence" under the Career Offender guideline (§ 4B1.1),

because, we explained, "[t]he definition of a 'violent felony' for purposes of the [ACCA] [was] the same in all material respects as the definition of a 'crime of violence'" in § 4B1.2(a) (which § 4B1.1 incorporates). Bell, 966 F.2d at 704. After all, the force clause of "section 4B1.2 employ[s] exactly the same language that Taylor relied on to justify an inference that a categorical approach was intended": the phrase defining a crime of violence as an offense that "*has as an element* the use, attempted use, or threatened use of physical force against the person of another." Id. at 704-05 & n.3 (emphasis added). That phrase — "has as an element" — was crucial in Taylor; since the ACCA (in its force clause) defines "violent felony" as a felony that "'has as an element' — not any crime that, in a particular case, involves — the use or threat of force," the Court held that the whole definition (including the "the phrase 'is burglary'" in the "enumerated offense" clause) must "refer[ ] to the elements of the statute of conviction, not to the facts of each defendant's conduct." Taylor, 495 U.S. at 600-01. We held that the same "elements"-focused language in § 4B1.2(a), coupled with the commentary, demanded the same elements-based (or "categorical") approach to classifying offenses as "crime[s] of violence" for purposes of the "Career Offender" enhancement (§ 4B1.1). See Bell,

966 F.2d 703.[2]  Although § 4B1.2(b) used different language, we soon adopted the same method to classify crimes as "controlled substance offense[s]" under § 4B1.1.  See United States v. Piper, 35 F.3d 611, 619 (1st Cir. 1994) (reasoning that the approach "mirror[ed] Congress's approach" to serious drug offenses under the ACCA and avoided the "practical difficulties" involved in excavating the facts underlying past convictions).

Under the categorical approach, we look only to the "elements" of the crime — i.e., "the constituent parts of [the] crime's legal definition" ("the things the prosecution must prove beyond a reasonable doubt to sustain a conviction") — and not "how a given defendant actually perpetrated the crime," to decide if the offense, as defined in the statute, matches § 4B1.2's criteria

---

[2] In Bell, and later in Gary, we went on to apply the "residual clause" of § 4B1.2(a)(Nov. 1990), which called an offense a "crime of violence" if it "present[ed] a serious potential risk of physical injury to another."  Bell, 966 F.2d at 706-07; Gary, 74 F.3d at 316.  The Sentencing Commission later deleted that clause. See Amendment 798 (Aug. 1, 2016).  But § 4B1.2(a) retains the "as an element" language that, in our view, called for the categorical approach to classifying "crime[s] of violence."  By the way, that's the same language the Supreme Court has since found most significant in interpreting the definition of "violent felony" in the ACCA, and similar definitions elsewhere in the U.S. Code, to mandate a categorical approach.  See, e.g., United States v. Davis, 139 S. Ct. 2319, 2328 (2019) (citing Leocal v. Ashcroft, 543 U.S. 1, 7 (2004)); see also United States v. Frates, 896 F.3d 93, 96–97 (1st Cir. 2018) (noting that the ACCA's force and enumerated clauses, see 18 U.S.C. § 924(e)(2)(B), are "materially identical to the Guidelines' crime of violence definition," though Amendment 798 added a few enumerated offenses to § 4B1.2(a)'s text).  More on that later.

for a "crime of violence" or "controlled substance offense." Mathis v. United States, 136 S. Ct. 2243, 2248, 2251–52 (2016) (internal citations omitted); accord United States v. Martinez, 762 F.3d 127, 133 (1st Cir. 2014) ("A state offense qualifies as a crime of violence only if its elements are such that . . . a person convicted of the offense has 'necessarily' been found guilty of conduct that meets [§ 4B1.2's] definition."). We call the test "categorical" because it "function[s] as an on-off switch" so a "crime [will] qualify as a predicate in all cases or in none." Descamps v. United States, 570 U.S. 254, 268 (2013).

To decide if a conviction is for a covered offense, we take three steps. First, we ask if a conviction under the statute requires (as pertinent here) either the violent use of force against someone or possession of a controlled substance with intent to distribute; if yes, the offense counts. See United States v. Mohamed, 920 F.3d 94, 101 (1st Cir. 2019) (asking if the state statute "require[d] an intent to distribute [a controlled substance] as an element of the crime"); United States v. Williams, 529 F.3d 1, 4 (1st Cir. 2008) ("If the court determines that a violation of the statute in question necessarily involves each and every element of a violent crime, then the offense is deemed a crime of violence[.]"). If the statute is overbroad (if it criminalizes both covered and non-covered conduct) then the court must see if it's "divisible": i.e., whether it sets out "discrete

offenses that can be separated from each other." United States v. Faust, 853 F.3d 39, 51 (1st Cir. 2017).[3]  If the statute *is* divisible into several distinct crimes, one of which is a "crime of violence" or "controlled substance offense," the court "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Mathis, 136 S. Ct. at 2249 (citing Shepard v. United States, 544 U.S. 13, 26 (2005)).  This last step, when a court peeks beyond the statute defining the crime to the record of conviction, is called the "modified categorical approach."  Id.

At the heart of this appeal is whether a court must use a similar framework in the revocation context to decide whether the defendant committed a "crime of violence" or "controlled substance offense" under § 7B1.1(a)(1).  García says yes; the government says no.  Here's how we got there.

_____

[3] To be divisible, a statute must list "elements in the alternative . . . thereby defin[ing] multiple crimes." Mathis, 136 S. Ct. at 2249. Here, the word "element" is important: again, it's a "constituent part[ ] of a crime's legal definition" — something that "the prosecution must prove to sustain a conviction." Id. at 2248–50. Thus, not every statute that lists things in the disjunctive (using either/or) is divisible. If the statute "merely specifies diverse means of satisfying a single element of a single crime — or otherwise said, spells out various factual ways of committing some component of the offense — a jury need not find (or a defendant admit) any particular item." Id. So such a statute wouldn't be divisible into two separate offenses. Id.

## THE FACTS

In 2008, the United States District Court for the District of Puerto Rico sentenced García to eighty-seven months in prison and eight years of supervised release for his part in a drug conspiracy. He was released in November 2016 and began his supervised release term.

He wasn't out long. About seven months later, Puerto Rican police caught García with a smorgasbord of drugs outside a Guayama housing project. Catching wind, García's probation officer filed a motion to revoke his supervised release. The officer wrote in his "Motion to Show Cause" that García "was arrested, in a drug point at Luis Pales Matos Public Housing Project in Guayama . . . in possession of marijuana, cocaine[,] and unprescribed pills." The Puerto Rico Commonwealth court released him on bond a month later.

But within the next month, García was arrested again. This time (according to the probation officer's second sworn motion, and his girlfriend's sworn statement), he got into the back of his girlfriend's car, climbed into the front, and sat on top of her while "struggling . . . to gain control of the vehicle." Meanwhile, he was "hitting her with an open hand," bruising her face and splitting her upper lip. Once he got control of the car, he drove the woman from the housing project to a store, where she managed to escape. The probation officer's motions alleged a

violation of the no-new-crimes condition and a few less serious drug-related violations.

As the motions noted, García was charged in the Commonwealth court with violating Article 401 of the Puerto Rico Controlled Substances Act ("CSA"), P.R. Laws Ann. tit. 24, § 2401 (prohibiting the possession of a controlled substance with intent to "manufacture, distribute, dispense, transport or conceal" it), and Articles 3.1 ("Abuse") and 3.4 ("Abuse by Restriction of Liberty") of Puerto Rico Domestic Violence Law 54.[4]  After a plea bargain, however, the Commonwealth "reclassified" most of those charges.  They downgraded the drug charges from Article 401 to Article 406, which punishes conspiracy or attempt to commit "any

---

[4] Any person who employs physical force or psychological abuse, intimidation, or persecution against his/her [spouse or other listed domestic relation] in order to cause physical harm to the person, the property held in esteem by him/her, except that which is privately owned by the offender, or to another person, or to cause serious emotional harm, shall be guilty of a fourth-degree felony in the upper end of the range.

P.R. Laws Ann. tit. 8, § 631 (Article 3.1).

Any person who uses violence or intimidation against his/her [spouse or other listed domestic relation] or who uses the pretext of suffering from, or that one of the aforementioned persons suffers from a mental disease or defect to restrict the victim of liberty with his/her knowledge, shall be guilty of a third-degree felony in the lower end of the range.

P.R. Laws Ann. tit. 8, § 634 (Article 3.4).

- 11 -

offense" under the CSA and permits a lower penalty. P.R. Laws Ann. tit. 24, § 2406. And they watered down the Article 3.4 "restriction of liberty" charge to simple abuse under Article 3.1. García pled guilty to these lesser offenses and was sentenced to three years, six months, and one day in prison.

In a motion to schedule a revocation hearing, García wrote that he would "not contest the allegations contained in the Motions Notifying Violations of the Supervised Release Conditions" — the full title of the probation officer's two motions described above — but would instead make "arguments in mitigation of punishment." At the hearing, his counsel reiterated that he was "not challenging the allegation alleged in the motion." Instead, García urged that, using the categorical approach, the government could not show he committed a "crime of violence" or "controlled substance offense." To his mind, only two of the crimes charged — possession of a controlled substance with intent to distribute under Article 401, and conspiring/attempting to do so under Article 406 — were covered offenses (specifically, "controlled substance offenses") under § 7B1.1(a). But the available Shepard documents (the minutes of the plea hearing, the plea agreement, or the judgment from the Commonwealth court) showed that García only pled guilty to an Article 406 conspiracy/attempt to commit *some* offense under the Puerto Rico CSA. So in García's view, the court had to

classify his violation as Grade B, yielding a guideline range of 18-24 months.

The district judge disagreed. First, she said, even if the modified categorical approach applied, the sworn Puerto Rico complaints charged García with possessing marijuana and cocaine with intent to distribute them under Article 401, which meant that he must have pled guilty to conspiring or attempting to commit that offense. Anyway, she reasoned, the revoking court could look past García's conviction to his "underlying conduct." So she considered evidence beyond the Commonwealth court records of conviction — including the information in the probation officer's motion, the sworn complaints, and García's girlfriend's witness statement — to conclude that García possessed marijuana and cocaine with intent to distribute, violating Article 401, and committed "violent crimes under [Domestic Violence] Law 54." These crimes, the judge found, were Grade A violations of García's supervised release because they were (respectively) a "controlled substance offense" and a "crime of violence" under U.S.S.G. § 7B1.1(a)(1). Based on those findings, she calculated the guideline range as 30-37 months and sentenced García to thirty-six months in prison, to run consecutively with the Puerto Rico sentences.

**OUR TAKE**

On appeal, García challenges the "Grade A" tag. And he advances a similar argument to the one he made below. To apply

- 13 -

§ 7B1.1(a)(1) the right way, he tells us, the court must first decide if the state or federal law the defendant violated describes a "crime of violence" or a "controlled substance offense" as defined in the Guidelines.  Next, if the law is overbroad and divisible (for example, if it defines two separate offenses, only one of which counts, see Mathis, 136 S. Ct. at 2249), the government must identify "which of the multiple offenses in the statute the defendant's conduct constituted."  United States v. Willis, 795 F.3d 986, 992-94 (9th Cir. 2015).  To do so, he says, it may "present[ ] witnesses at the final revocation hearing or introduce[ ] documents pertaining to the underlying state case to show the crime [the defendant] committed."[5]

---

[5] García rightly points out that we've already applied the categorical approach to classify an offense as a "crime of violence" in the revocation context.  In United States v. Eirby, we relied on the elements of the Maine statute (criminalizing sexual abuse of a minor) under which the defendant was convicted in state court to conclude that he committed a Grade A violation under § 7B1.1(a)(1)(A).  515 F.3d 31, 37-39 (1st Cir. 2008) (concluding that the "conduct criminalized by [the Maine statute] categorically pose[d] a serious risk of physical injury" and, therefore, was a "crime of violence" under § 4B1.2(a)'s since-deleted residual clause).  The government parries that Eirby didn't tether us to the categorical approach because there, we just "*assumed* that [we] must examine the offense without regard to actual conduct," as neither party argued for a different approach. Gov.'s Br. at 35.  Since we conclude that the text of §§ 7B1.1(a)(1) and 4B1.2 compels the use of the categorical approach here, we need not decide whether Eirby foreordained that result.

García urges that since the government "opted for the latter course" in this case — meaning it "asked the district court to glean from the state court records the specific offense Mr. García violated" — the court could only rely on Shepard-approved documents to show the offense he committed was possession of controlled substances with intent to distribute (or attempt/conspiracy to do so). In other words, the court could not use the original Article 401 charge, since García pled guilty to a lesser offense. See United States v. Rivera, No. 14-2039, slip op. at 1 (1st Cir. Aug. 17, 2015) (judgment) (holding that when determining whether a past conviction was for a "crime of violence" under the Guidelines, "a district court may not rely on a charging document without first establishing that the crime charged was the same crime for which the defendant was convicted") (quoting United States v. Bernal-Aveja, 414 F.3d 625, 627–28 (6th Cir. 2005)).

The government begs to differ. In its view, the categorical approach does not apply (at all) in revocations. After all, the Guidelines' commentary makes "the grade of [a supervised release] violation" depend on "the defendant's actual conduct," and not "the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding." U.S.S.G. § 7B1.1 cmt. n.1. So, says the government, once the court finds the defendant committed a new crime, it can ignore whatever law (with whatever elements) the defendant broke and just ask

whether his "actual conduct presented the use . . . of physical force against the person of another" or the "possession of a controlled substance with the intent to distribute."

Reading the Guidelines with fresh eyes ("de novo"), United States v. Rivera-Berríos, 902 F.3d 20, 24 (1st Cir. 2018), we think their text mandates a middle ground. Under § 7B1.1(a)(1)(A)(i) and (ii), as set out above, the government must take two steps to show a Grade A violation. First, it needs to point to some "federal, state, or local offense" punishable by more than a year in prison that is (i) "a crime of violence" or (ii) "a controlled substance offense." To answer this question, we hold, § 4B1.2 requires the categorical approach. Once the government identifies a qualifying offense, however, it need not show the supervisee was convicted of that offense; it need only show that the supervisee actually committed (that his "conduct constituted") the crime's elements as defined in the statute (or state common law). § 7B1.1(a) & cmt. n.1. To answer that question, the revoking court may look beyond the Shepard documents (which are only needed "to determine what crime . . . a defendant was convicted of," Mathis, 136 S. Ct. at 2249 (emphasis added)), and consider any other evidence admissible in revocation hearings. See Gary, 74 F.3d at 316 (prescribing a similar two-step inquiry to determine if a defendant possessed a firearm "in connection with" a "crime of violence" or "controlled substance offense" under

- 16 -

§ 4B1.4(b)(3)(A)).  In so holding, we join the Third and Ninth Circuits, who have adopted this same hybrid approach to § 7B1.1(a)(1)(A).  See Willis, 795 F.3d at 992–94; United States v. Carter, 730 F.3d 187, 192–93 (3d Cir. 2013).[6]

To unspool our reasoning, we take these two steps in turn.

### Step One: Categorical Approach

As we noted earlier, we've interpreted § 4B1.2's definitions of "crime of violence" and "controlled substance offense" — no matter *where* they're used in the guidelines, and no matter *what* they're describing (be it a prior conviction or a crime freshly committed and found by the sentencing court) — to call for a categorical approach to deciding which crimes they cover.  See

---

[6] The government claims that the Third Circuit took its side in Carter when it wrote that "[i]n the revocation context . . . the categorical approach does not apply, and district courts may consider a defendant's actual conduct in determining whether they have broken the law and thus the terms of their supervised release."  730 F.3d at 192.  Later in the opinion, however, the court clarified that "in determining whether [the] offense is a 'crime of violence,' § 4B1.2 requires that it contain an element of force"; "[i]t is therefore not enough to say that a defendant's actions were simply violent or forcible without pointing to a crime containing those same elements."  Id. at 193.  The court went on to find the district court gaffed because it failed to identify a "federal or state offense" that the defendant violated, so the court of appeals could not analyze the "elements" to see if they matched § 4B1.2(a)'s definition.  See id.  Best read, then, Carter held (as we do today) that a court applying § 7B1.1(a)(1)(A)(i) must identify a statutory crime that requires violent force as an element (read: apply the categorical approach), but may look beyond convictions and Shepard documents to see if the defendant committed that crime.

*supra* at 4–5. That's because, under § 4B1.2, it's the "*offense under federal or state law*," and not the defendant's "conduct," that must "ha[ve] as an element" the violent use of force, U.S.S.G. § 4B1.2(a)(1), be "robbery, arson, extortion," etc., id. § 4B1.2(a)(2), or "prohibit" drug possession with distributive intent, id. § 4B1.2(b). True, "in ordinary speech[,] words such as 'crime, 'felony,' 'offense,' and the like sometimes refer to a generic crime," like "the crime of fraud or theft in general" and sometimes mean the "specific acts in which an offender engaged on a specific occasion," like the heist (s)he pulled off last month. Nijhawan v. Holder, 557 U.S. 29, 33–34 (2009). But when Congress uses the first, generic meaning, we must "look to the statute defining the offense" (that is, use the categorical approach) to see if it counts. Id. And in § 4B1.2, the word "offense" requires just that.

First, "the text of [§ 4B1.2(a)]" directs us to "the elements of the offense, rather than the conduct that this particular defendant engaged in committing [it]." United States v. Ellison, 866 F.3d 32, 35 (1st Cir. 2017). For that reason, the Supreme Court has long held that the near-identical language in the ACCA (which "defines the 'violent felonies' it covers to include 'burglary, arson, or extortion' and 'crime[s]' that have 'as an element' the use or threatened use of force") "refers directly to generic crimes" and demands a categorical approach.

- 18 -

<u>Nijhawan</u>, 557 U.S. at 34. "Elements," recall, are "the 'constituent parts' of [the] crime's *legal definition*." <u>Mathis</u>, 136 S. Ct. at 2248 (emphasis added). So to figure out what an offense "has as an element," we "must look to the statute defining the offense." <u>Nijhawan</u>, 557 U.S. at 34; <u>see also</u> <u>Leocal</u> v. <u>Ashcroft</u>, 543 U.S. 1, 6-7 (2004) (stressing the same "as an element" language in holding that a nearly identical definition of "crime of violence" in 18 U.S.C. § 16 — a definition used throughout the U.S. Code to cover not only convictions, but also threatened, alleged, and freshly committed crimes — "requires us to look to the elements" of the offense and not "to the particular facts relating to the petitioner's crime"); <u>Taylor</u>, 495 U.S. at 600-01.[7]

The same goes for § 4B1.2(b), which (covering "an offense under federal or state law . . . that prohibits" drug trafficking) also refers to a "generic" crime as defined in the law, and not the defendants' conduct that happens to violate it.

---

[7] The Sentencing Commission's notes on the 2016 Amendments to § 4B1.2 reinforce that the categorical approach applies to defining "crimes of violence" and "controlled substance offenses" no matter what guideline incorporates § 4B1.2. Acknowledging that "[t]he 'crime of violence' definition at § 4B1.2 is used to trigger increased sentences under several provisions in the Guidelines Manual," including "7B1.1," the Commission wrote that to apply the "enumerated offense" clause in subsection (a)(2), "courts compare the elements of the predicate offense of conviction with the elements of the enumerated offense in its 'generic, contemporary definition.'" <u>Id.</u>

After all, criminal laws — not criminal defendants — are what "prohibit" drug dealing (unless we were to say that legislators commit "controlled substance offenses" by enacting them). Thus, we've held that this "definition of 'controlled substance offense'" in § 4B1.2(b) is what "requires that the *statute* under which the defendant was charged involves an intent to distribute or other indicia of trafficking." Bryant, 571 F.3d at 157 (emphasis added); see also United States v. Martínez-Hernandez, 422 F.3d 1084, 1087 (10th Cir. 2005) (using the categorical approach to determine whether a crime is "[a]n offense under federal, state, or local law that prohibits the possession of [certain] firearm[s]," U.S.S.G. § 2L1.2(b)(1), figuring that just as the phrase "'[t]hat has as an element' asks us to look at the elements of the statute of conviction; 'that prohibits' asks us to look at what the statute prohibits").

On the other hand, if the Sentencing Commission wanted to trigger a Grade A violation whenever the defendant "used physical force against the person of another" or "possessed a controlled substance with the intent to distribute," it could have said just that.[8] See Sessions v. Dimaya, 138 S. Ct. 1204, 1218

---

[8] Just flip open the Guidelines Manual; chances are you'll see an example. See, e.g., U.S.S.G. § 2D1.1(b) ("(1) If a dangerous weapon (including a firearm) *was possessed*, increase by two levels. (2) *If the defendant used* violence, made a credible threat to use violence, or directed the use of violence, increase by 2 levels."); id. § 2H1.1(a)(3) (setting a base offense level of

(2018) ("If Congress had wanted judges to look into a felon's actual conduct, 'it presumably would have said so; other statutes, in other contexts, speak in just that way'" (quoting Descamps, 570 U.S. at 267–68)) (interpreting 18 U.S.C. § 16). Instead, the Commission incorporated § 4B1.2, its focus on "elements" and "prohibit[ions]," and all the baggage those words carry. See U.S.S.G. § 7B1.1 cmt. nn. 2, 3. And there's no reason to think (as the government must) that § 7B1.1(a)(1) borrows some parts of § 4B1.2 (the language the government quotes), but not others (the references to "elements" and "prohibitions"). See Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund, 138 S. Ct. 1061, 1078 (2018) (refusing to read a cross-reference to a whole subsection to refer only to cherry-picked phrases within it; reasoning that if Congress meant to be more specific, it would have been).

Section 4B1.2's plain language therefore kiboshes the government's quest to turn "crime of violence" and "controlled substance offense" and their respective definitions into chameleons that vary their colors (to mean "specific acts" in

_____

"10, *if the offense involved* (A) the use or threat of force against a person; or (B) property damage or the threat of property damage."); see also id. § 2G1.1 (Nov. 1, 2004) ("*If the offense involved* (A) a commercial sex act; and (B) the use of physical force, fraud, or coercion, increase by 4 levels."); id. § 4B1.4(b)(3)(A) (setting a base offense level of "34, *if the defendant used or possessed* the firearm or ammunition in connection with either a crime of violence . . . or a controlled substance offense") (all emphases added).

- 21 -

§ 7B1.1(a) but a "generic" crime in other contexts) depending on what guideline puts them to work.  That would have taken some high-level hocus-pocus to begin with, anyway, since "[i]n all but the most unusual situations, a single use of a statutory phrase" (like "offense," "element," and "prohibits" in § 4B1.2) "must have a fixed meaning," United States v. Davis, 139 S. Ct. 2319, 2328 (2019), and since the "[Supreme] Court has held (it could hardly have done otherwise) that 'we must interpret'" § 16's materially identical "crime of violence" definition "consistently," no matter what provision in the U.S. Code (be it a civil or criminal one) incorporates it, Dimaya, 138 S. Ct. at 1217 (quoting Leocal, 543 U.S. at 12, n.8).

In concluding that the categorical approach applies here, we part ways with three other circuits. See United States v. Golden, 843 F.3d 1162, 1166–67 (7th Cir. 2016) (citing United States v. Trotter, 270 F.3d 1150, 1155 (7th Cir. 2001)); United States v. Mendoza, 782 F.3d 1046, 1048 (8th Cir. 2015) (citing United States v. Schwab, 85 F.3d 326, 327 (8th Cir. 1996)); United States v. Cawley, 48 F.3d 90, 93 (2d Cir. 1995). Respectfully, these decisions don't change our minds.  None of them engaged with the text of § 4B1.2 (only Crawley even quoted it) or explained what work "as an element" (not to mention "prohibits") is doing there, if not to invite the same categorical approach the Court has held it commands in the U.S. Code.  See Nijhawan, 557 U.S. at

- 22 -

34; Leocal, 543 U.S. at 7; Taylor, 495 U.S. at 600-01. Instead, they (like the government) rely on a statement in the commentary that the "[t]he grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct." U.S.S.G. § 7B1.1, cmt. n.1; see Golden, 843 F.3d at 1166; Schwab, 85 F.3d at 327. But if the Application Note really required courts to grade violations based *only* on actual conduct, and ignored the "offense under federal or state law" that the defendant violated, the Note would clash with the text, and the text would prevail. See United States v. Soto-Rivera, 811 F.3d 53, 60 (1st Cir. 2016).

**Step Two: Actual Conduct**

Anyway, in our view, the text steers clear of that collision, since it jibes with Application Note 1. Because once the government identifies a "crime of violence" or "controlled substance offense" — whether in the form of an "indivisible" statute, or a discrete "offense" defined in a "divisible" statute — the court must look at the defendant's actual conduct to determine (by a preponderance of the evidence) whether that "conduct constituted" (that is, whether he committed) the covered offense. See Carter, 730 F.3d at 192 (holding that "[t]he courts may consider a defendant's actual conduct in determining whether they have broken the law"); accord Willis, 795 F.3d at 992-94. In

- 23 -

doing so, the court may consider live testimony and other evidence admissible in revocation proceedings, including "affidavits, depositions," "documentary evidence," and reliable hearsay. United States v. Marino, 833 F.3d 1, 5 (1st Cir. 2016) (quoting Gagnon v. Scarpelli, 411 U.S. 778, 782 n.5 (1973); see also United States v. Rondón-García, 886 F.3d 14, 21 (1st Cir. 2018) (explaining that evidence supporting a sentence must have "sufficient indicia of trustworthiness" to prove it's probably accurate (quoting United States v. Rodríguez, 336 F.3d 67, 71 (1st Cir. 2003)); U.S.S.G. § 6A1.3.[9]

García was with us in his thinking until that last point. In his telling, at least in cases like this one, where the government relies on documentary evidence from the state prosecution (instead of live testimony) to show the defendant committed a Grade A violation, the revoking court may only consult Shepard documents (to review: papers from the defendant's record of conviction, like the plea colloquy and charging documents) to decide what crime was committed. Throughout his briefs, he cites various decisions where we required Shepard records to determine the defendant's crime of conviction. See, e.g., Ramos-González,

---

[9] We do not here decide whether Rule 32.1(b)(2)(C) (entitling the supervisee to "question any adverse witness" at a revocation hearing "unless the court determines that the interest of justice does not require the witness to appear") applies to evidence used only to determine the post-revocation sentence.

775 F.3d at 507 (vacating defendant's sentence under the Career Offender guideline because the government did not provide Shepard records showing that the defendant's prior conviction under a divisible statute was for a "violent" offense; "[a]lthough the police complaint described a physically violent interaction, Ramos's admission of guilt may not have incorporated those details"); Rivera, No. 14-2039 (judgment), at *1 (vacating sentence enhanced based on prior conviction for "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A) for the same reason).

But that's just it; the enhancements applied in those cases required "convictions" for covered offenses. So to apply them, the courts needed Shepard documents to determine what the defendant "necessarily admitted" when he pled guilty, i.e., "what crime, with what elements, the defendant was *convicted* of." Mathis, 136 S. Ct. at 2249 (citing Shepard, 544 U.S. at 26) (emphasis ours); see also United States v. Serrano-Mercado, 784 F.3d 838, 842 (1st Cir. 2015) (explaining that "we look to . . . Shepard documents . . . not to determine the conduct the defendant engaged in while committing an offense, as such conduct is of no relevance," but instead "to identify . . . the actual offense of conviction" (citing Descamps, 133 S. Ct. at 2281)). Yet, as García acknowledges, § 7B1.1(a)(1) asks a different question: whether the defendant *actually committed* (whether his "conduct constitutes") the qualifying crime. *That* question demands a

- 25 -

different answer, and the records of conviction are not the only ones reliable enough to provide it.  See United States v. Bueno-Beltrán, 857 F.3d 65, 67–68 (1st Cir. 2017) (holding that the district court properly considered detailed and corroborated witness statements and drug field tests to determine that defendant committed new crimes in violation of his conditions of supervised release).[10]

With the legal framework in place, on to García's alleged crimes.

### García's Drug Offenses

As we read the judge's decision, she made two independent findings about García's alleged drug offenses:  first, that he pled guilty to attempting or conspiring to possess a controlled

---

[10] By the way, Eirby did not hold otherwise.  There, the defendant admitted (by pleading guilty in state court) that he committed the Maine crime in question:  sexual abuse of a minor under 17-A M.R.S.A. § 254(1)(A-2).  515 F.3d at 34.  He urged that the district court misclassified this admitted crime as a "crime of violence"; we disagreed — and categorically so.  See id. at 37-39 (explaining that "the conduct criminalized by section 254(1)(A-2) categorically poses a serious risk of physical injury," making it a crime of violence under the residual clause and a Grade A violation).  As a result, we did not need to decide whether the district court could look beyond Shepard documents to find that the defendant's conduct constituted an offense different from the one he pled guilty to.  As we hold today, the answer is yes, it can — any dicta in Eirby, 515 F.3d at 37 (stating that if the statute is divisible, the court "must . . . determine whether the record of conviction reveals all the elements of a violent crime") notwithstanding.  See United States v. Starks, 861 F.3d 306, 323 (1st Cir. 2017) (explaining that dicta, i.e., statements that are "not necessary to the court's conclusion," are not binding).

- 26 -

substance with intent to distribute it, in violation of Article 406, and second, that he actually possessed cocaine and marijuana with intent to distribute them, which infracted Article 401. Article 401 (as relevant here) prohibits the possession of marijuana and cocaine (among other drugs) with intent to "distribute, dispense, transport or conceal" it, P.R. Laws Ann. tit. 24, § 2401, while Article 406 criminalizes the lesser offense of "attemp[ing] or conspir[ing]" to commit *any* offense under Puerto Rico's CSA, including simple possession under Article 404, P.R. Laws Ann. tit. 24, § 2406.

### *Article 406*

As García correctly points out, after his revocation, we undercut the trial court's first line of reasoning. In Martínez-Benítez, the defendant (like García) was charged with possession with intent to distribute a drug (heroin) under Article 401, reclassified to an unspecified Article 406 conspiracy/attempt charge before he pled guilty. 914 F.3d at 3. And as here, the district judge assumed that "if a defendant pleads guilty to an Article 406 attempt/conspiracy violation following an Article 401 possession-with-intent-to-distribute charge, then it *always* means he stands convicted of attempt/conspiracy to possess drugs with distributive intent." Id. at 7. So the judge found Martínez-Benítez had a past conviction for a controlled substance offense and jacked up his offense level under § 2K2.1(a)(4)(A). See

Martínez-Benítez, 914 F.3d at 3-4. On appeal, we rejected that approach, holding that the government couldn't bank on the "reclassified" intent-to-distribute charge to prove the defendant pled guilty to conspiring/attempting to commit a specific crime: to *possess the drug with intent to distribute it*. Id. at 5-8 (noting that the defendant's three-year suspended sentence was "certainly consistent with his having pled to attempting/conspiring to possess heroin *without* distributive intent" under Article 404, since it was below Article 404's five-year maximum). The government had to rely on Shepard documents, and those it produced weren't helpful. Id. So we vacated and remanded for resentencing without the conviction-based enhancement. Id.

Given Martínez-Benítez, the government does not defend the judge's conclusion that García pled guilty to attempting/conspiring to distribute drugs under Article 406. So if the judge had hinged her decision on it, García's case for reversal would be stronger. See Pullman-Standard v. Swint, 456 U.S. 273, 287 (1982) ("[I]f a district court's findings rest on an erroneous view of the law, they may be set aside on that basis."). As we've explained, however, unlike in Martínez-Benítez (where § 2K2.1(a)(4)(A) demanded a prior "conviction" for a controlled substance offense) the judge did not need to rely on García's guilty plea to find a Grade A violation under § 7B1.1(a)(1)(A)(ii)

- 28 -

(which asks only whether the defendant *committed* the covered offense). And as we've described, she did not. Rather, she laid a separate ground for the A Grade; she also looked to García's actual conduct, gleaned from other evidence (we'll review it in a minute), to find he possessed marijuana and cocaine with intent to distribute — which broke Article 401.

*Article 401*

Article 401 is not an out-and-out ("categorical," in the now familiar lingo) controlled substance offense. In arguing otherwise, the government runs up against Dávila-Félix, in which we held that Article 401 "cannot categorically qualify as a 'controlled substance offense' within the meaning of § 4B1.2(b)." 667 F.3d at 56. We reasoned that "in addition to criminalizing the more obvious drug trafficking offenses, such as distribution, dispersal and possession with intent to distribute controlled substances, [it] also criminalizes actions that are not commonly considered drug trafficking offenses, such as concealment of a controlled substance." Id. And since the statute proscribes "conduct that falls outside the guidelines definition" (i.e., mere concealment), it's ineligible for full membership in the "controlled substance offense" club. Id.

Conceding that Dávila-Félix is on point, the government urges that the decision's "interpretation of Article 401 is contradicted by the Puerto [Rico] Supreme Court," citing Pueblo v.

<u>Rosario Cintrón</u>, 102 D.P.R. 82, 86, 2 P.R. Offic. Trans. 107, 112 (P.R. 1974).[11]  Per the government, <u>Rosario Cintrón</u> "expressed that concealment or transportation of drugs under Article 401 always involved drug trafficking, not mere possession," which means Article 401 is "categorically . . . a controlled substance offense under the guidelines."  Under "the law of the circuit" rule, "newly constituted panels" (like us) "are, for the most part, bound by prior panel decisions closely on point" (like <u>Dávila-Félix</u>). <u>United States</u> v. <u>Barbosa</u>, 896 F.3d 60, 74 (1st Cir. 2018) (quoting <u>Williams</u> v. <u>Ashland Eng'g Co.</u>, 45 F.3d 588, 592 (1st Cir. 1995)). Yet, we (as a panel) may use <u>Rosario Cintrón</u> to overturn <u>Dávila-Félix</u> because, says the government, "one of the narrow exceptions [to the rule] includes when the holding of a previous panel 'is contradicted by controlling authority.'"  Gov.'s Br. at 50 (quoting <u>United States</u> v. <u>Troy</u>, 618 F.3d 27, 35–36 (1st Cir. 2010)).

Which is a nice place to stop — if you don't like the rest of that sentence.  The full version reads, after all:

> A departure from the rule is warranted only when the earlier holding is "contradicted by controlling authority, *subsequently announced*" (say, a decision of the authoring court en banc, a Supreme Court opinion directly on point, or a legislative overruling), or in the "rare instances in which authority *that postdates the original decision*, although not directly controlling, nevertheless offers a sound reason for believing that the

---

[11] "[A] federal court is bound by the construction of state law rendered by the highest court of the state," or in this case, the Commonwealth.  <u>United States</u> v. <u>Holloway</u>, 630 F.3d 252, 259 (1st Cir. 2011).

former panel, in light of fresh developments, would change its collective mind."

Troy, 618 F.3d at 35–36 (citations omitted) (emphases added) (going on to find the appellant's cases "lack[ed] force" because they "predate[d]" the decision she sought to overrule and "thus [were] impuissant against the law of the circuit rule"); see also United States v. Mouscardy, 722 F.3d 68, 77 (1st Cir. 2013) ("[W]e are 'bound by a prior panel decision, absent any intervening authority.'" (quoting United States v. Grupee, 682 F.3d 143, 149 (1st Cir. 2012)); United States v. Holloway, 499 F.3d 114, 118 (1st Cir. 2007) ("[O]nly the Supreme Court or an en banc court can overturn prior panel precedent in ordinary circumstances[.]").  In other words, the government can't dislodge Dávila-Félix with a case decided thirty-seven years earlier — at least not at this juncture.

That said, García does not dispute that Article 401 does criminalize § 4B1.2(b)-covered conduct:  the possession of cocaine with intent to distribute.  So as described earlier, that it also covers non-qualifying drug offenses (i.e., possession with intent to conceal) doesn't end our journey.  Instead, we ask whether Article 401 is "divisible":  i.e., whether Article 401 possession with intent to distribute is a discrete crime, distinct from "intent to conceal," with its own elements.  See Faust, 853 F.3d at 51.  The Puerto Rico Supreme Court has indicated that it is;

according to that tribunal (which has the final word on Article 401's scope), the statute characterizes "possession . . . with intent to distribute" and "transportation and concealment . . . as separate offenses" to be charged as separate counts. <u>Fuentes Morales</u> v. <u>Superior Court</u>, 102 D.P.R. 705, 708, 2 P.R. Offic. Trans. 910, 914 (P.R. 1974). "When a ruling of that kind exists, a sentencing judge need only follow what it says." <u>Mathis</u>, 136 S. Ct. at 2256; <u>see also</u> <u>Martínez-Benítez</u>, 914 F.3d at 5 (stating that "attempt/conspiracy to possess [cocaine] with distributive intent" under Article 406 (referencing Article 401) qualifies as a discrete "controlled substance offense"). García does not argue otherwise; in fact, he conceded below that his charged offense under "Article 401 . . . possession with intent to distribute" is "a controlled substance offense." So if there was enough evidence to find that García possessed the drugs with distributive intent, the district judge could reasonably call that crime a Grade A violation.

*Sufficient Evidence*

In the district judge's view, there was ample evidence that García possessed "cocaine, marijuana, and pills in distribution amounts." García disagrees.

Normally, we'd review the judge's factfinding for clear error, reversing if a review of the whole record gives us a "strong, unyielding belief" that she messed up. <u>United States</u> v.

Nuñez, 852 F.3d 141, 144 (1st Cir. 2017); see also United States v. Oquendo-Rivera, 586 F.3d 63, 67 (1st Cir. 2009). But that standard applies only when the appellant preserved his challenge with an objection "specific" enough "to call the district court's attention to the asserted error." United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017). And García's only pitch to the district judge was the one we've just debunked: that the judge had to zero-in on the Shepard-approved records of his Puerto Rico convictions to see if García *pled guilty* to a controlled substance offense and ignore the other evidence suggesting he *actually committed* one. The probation officer submitted that other evidence to the parties and the judge before the final hearing. First, there were the sworn complaints charging that García possessed marijuana and cocaine with the intent to distribute them. Second, García admitted to the allegations in the probation officer's motions, which charged that he possessed those same drugs at a drug point. And third, drug field tests (run by the Puerto Rico police and submitted by probation) showed that García had fifteen vials of cocaine and thirty-nine vials of marijuana, along with ten baggies of pills. Below, García did not contend that this evidence (if it could be considered) failed to show that he more-

likely-than-not possessed marijuana and cocaine with intent to distribute them.[12]

Since he raises this challenge for the first time on appeal, the judge's decision will stand unless García shows that she made a plain ("clear or obvious") error that "affected [his] substantial rights" and "seriously impaired the fairness, integrity, or public reputation of judicial proceedings" — a high bar. Soto-Soto, 855 F.3d at 448. García doesn't clear this hurdle. He points out (correctly, as we explain in another opinion issued today, see United States v. Colón-Maldonado, No. 18-1388, ___ F. 3d ___ [Slip Op. at 16–25]) that the bare accusations in the Puerto Rico complaints and probation officer's motions, standing alone, would not support the Grade A finding. But he doesn't tell us why it's obvious that his *admission* to probation's allegations plus the field test results (together saying that he had sixty-four separate containers of marijuana, cocaine, and pills at a drug point) don't cut it — even though we've previously found no "error, plain or otherwise, in [a] district court's

---

[12] By the way, García has not — neither below nor before us — argued that he should have been given an opportunity to question the arresting officers, the agent who tested the drugs, or any other witness under Rule 32.1(b)(2)(C). Cf. Bueno-Beltrán, 857 F.3d at 68; Marino, 833 F.3d at 4-7. Nor does he contend he lacked a fair opportunity to request an evidentiary hearing or to argue that his own admissions and the drug field tests (taken together) were insufficient to prove he actually possessed the drugs with distributive intent. See United States v. Rodriguez, 919 F.3d 629, 635 (1st Cir. 2019).

consideration of [such] field test results to support [a] finding that [a defendant] violated the terms of his supervised release," Bueno-Beltrán, 857 F.3d at 68, and even though "[w]e have held that a large amount and individual packaging of drugs is sufficient to demonstrate an intent to distribute," United States v. Ayala-García, 574 F.3d 5, 13 (1st Cir. 2009); accord Mohamed, 920 F.3d at 106. Indeed, he does not address the field test results at all. So he gives us no reason to conclude that the judge committed plain error when she found García infracted Article 401 of the Puerto Rico CSA — a "controlled substance offense" under the Guidelines, U.S.S.G. §§ 4B1.2(b), 7B1.1(a)(1)(A)(ii).

## CODA

Because we find the district judge did not commit reversible error when she tagged García's drug offense with an A Grade, we need not decide whether either of his domestic abuse offenses (under Article 3.1 or 3.4 of Puerto Rico Domestic Violence Law 54) deserved that label. See U.S.S.G. § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."); United States v. Hinkley, 803 F.3d 85, 93 (1st Cir. 2015) (noting that a guideline error is harmless if it doesn't change the range). And so, all that is left to say is

- 35 -

*Affirmed.*