# United States Court of Appeals
## For the First Circuit

No. 21-1880

UNITED STATES OF AMERICA,

Appellee,

v.

DARREN FRANKLIN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

Jonathan Shapiro, with whom Mia Teitelbaum and Shapiro & Teitelbaum LLP were on brief, for appellant.
Karen L. Eisenstadt, Assistant United States Attorney, with whom Rachael S. Rollins, United States Attorney, was on brief, for appellee.

October 20, 2022

**SELYA**, **Circuit Judge**.    Defendant-appellant Darren Franklin challenges the district court's decision to admit and consider hearsay evidence when revoking his term of supervised release.    After careful consideration, we find his challenge wanting and affirm the judgment below.

**I**

Drawing from the record compiled in the district court, we briefly rehearse the relevant facts.    On April 30, 2007, the appellant was convicted by a jury of possessing and distributing cocaine base (crack cocaine) and of being a felon in possession of ammunition.    See 21 U.S.C. § 841(a)(1); 18 U.S.C. § 922(g)(1). The district court sentenced him to serve a thirty-year term of immurement, to be followed by a twelve-year term of supervised release.

Following the passage of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, the appellant moved to have his sentence reduced.    On October 24, 2019, the district court granted that motion, resentencing him to a prison term of eighteen years (which was effectively a sentence of time served).    On November 1, 2019, the appellant began serving his twelve-year term of supervised release under several conditions — among them, that he not commit any federal, state, or local crime.

On March 17, 2021, United States Probation Officer Kara Lightowler paid the appellant an early morning visit at his home

in Quincy, Massachusetts, where he resided with his longtime girlfriend, Nicola Clark, and their children. Lightowler testified that the appellant greeted her when she arrived, and they made small talk for a few moments before she asked him to provide a urine sample for a routine toxicology screening. While he went to the bathroom, Clark emerged from the bedroom and appeared — according to Lightowler — to be in a state of some distress. Clark indicated that she wanted to speak privately with Lightowler, mouthing the words silently in apparent fear of the appellant overhearing their exchange. Lightowler gave Clark her business card.

When the appellant returned from the bathroom, Lightowler, sensing tension within the home and concerned for her own safety, asked if she could speak with him outside. There, the appellant told her that his relationship with Clark had become strained and that he wished to move out of the home. Lightowler informed him that the probation office would need to be apprised of such a move. Their conversation then turned to more quotidian affairs. Once Lightowler left the residence, she called and messaged Clark, but received no response.

Not long thereafter, Clark called 911, requesting emergency police assistance. She said that the appellant was involved in illegal activity — specifically, drug dealing — and that he had two weapons, possibly guns, at least one of them stowed

in a black bag.  She also said that she had been trying for some time to get him to leave the home and that when she had attempted to move his belongings out of the home that morning, he pushed her.  She exhorted the police to come quickly as she suspected that he was hiding the weapons and drugs as she spoke.  She also asked that the officers withhold from him that she was the one who had called 911, saying, "I'm scared.  I don't want nothing to happen to me.  So don't let him know."

Officer Christian Donovan of the Quincy Police Department was among those who responded to the 911 call.  He testified that when he and the other officers arrived, the appellant was standing beside his car, which was parked with its tailgate open by the front porch at the top of the driveway.  While the other officers spoke with the appellant, Donovan entered the home to speak with Clark.

Inside, Clark's teenage son was consoling her, telling her to cooperate with the police.  According to Donovan, Clark was at first hesitant to speak, saying that she did not want the appellant to see her talking with police officers.  Even so, she proceeded to tell him that she and the appellant had argued that morning both about money that he allegedly had taken from her and about her desire that he leave the home.  She said that during the argument, the appellant had shoved her approximately five times.  When she picked up the phone to call 911, he began to gather his

- 4 -

belongings as a prelude to leaving the residence.  At that time, she saw him pick up a small black rectangular pouch from which protruded the butt-end of a gun.

The police arrested the appellant on charges of domestic assault and battery based on the allegation that he had shoved Clark during their argument.  Donovan then searched the area around the house with a dog specially trained to detect explosives and ballistics.  After finding nothing in the backyard or street, Donovan led the dog to the front porch and the rear of the appellant's vehicle.  Nearby, the appellant — upbeat and talkative despite being under arrest — was waiting to be taken to the police station.  Upon seeing the dog, he said (with a smile) that he did not have any drugs.  But when Donovan told him that the dog was trained to detect explosives and ballistics rather than narcotics, the appellant was crestfallen.  The dog then alerted to a scent near the front porch, upon which the officers found a tackle box. Within that box were two black rectangular leather pouches, each containing a loaded semiautomatic pistol.

After the search, Donovan questioned Clark further about her allegations of domestic violence.  This questioning included queries about whether the appellant had assaulted Clark in the past.  According to Donovan, Clark responded that two months before, she and the appellant had been arguing in the kitchen when their son came to her defense.  Enraged, the appellant grabbed a

frying pan from the stove and swung it, missing the son but striking Clark. She told Donovan that she had not reported the incident at the time because she had not wanted the appellant to be sent back to prison.

The appellant called Lightowler to tell her of the arrest. The appellant stated that Clark had reported to police that he had hit her and that a gun had been found at his house. He did not say to whom the gun belonged.

Lightowler also spoke on the phone with Clark (who was concerned that the appellant's family would blame her for his renewed incarceration). She mentioned to Lightowler, presumably while describing the events leading up to the appellant's arrest, that she had seen the appellant carry a black pouch with him as he gathered his belongings.

On the following day, a criminal complaint was lodged against the appellant, charging him with weapons and assault offenses under state law. Lightowler reported those charges to the district court and petitioned for the issuance of an arrest warrant. The district court issued the warrant. Revocation proceedings were then commenced.

At the revocation hearing, the government did not call Clark as a witness and instead relied upon the testimony of Lightowler and Donovan to present her statements. The appellant objected to the admission of such hearsay evidence on the ground

that Clark's statements were unreliable: he identified what he viewed as factual inconsistencies in her statements; he asserted that she offered her statements to police out of spite due to his meretricious relationships with other women; and he drew attention to discrepancies between Clark's statements to police and her testimony before the state grand jury (where she minimized the physical confrontation between her and the appellant on March 17 and equivocated when asked about the firearms she saw that day). But at no time during the final revocation hearing did the appellant object on the ground that the admission of the statements violated his right to confront and cross-examine the witness.

Based on the testimony of Lightowler and Donovan, as well as other evidence presented at the hearing, the district court found by a preponderance of the evidence that the appellant was guilty of several crimes, including possession of a firearm without a license, see Mass. Gen. Laws ch. 269, § 10(h)(1); improper storage of a firearm, see id. ch. 140, § 131L(a); and assault with a dangerous weapon, see id. ch. 265, § 15B(b). The district court also found the appellant guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The court then revoked the appellant's term of supervised release and sentenced

him to a new three-year term of immurement.[1]  This timely appeal ensued.

## II

In a revocation hearing, a court is not bound by the Federal Rules of Evidence.  See Fed. R. Evid. 1101(d)(3).  By the same token, a releasee is not afforded a Sixth Amendment right to confront adverse witnesses.  See United States v. Fontanez, 845 F.3d 439, 443 (1st Cir. 2017).  Hearsay evidence may thus be admitted as long as it is reliable.  See United States v. Portalla, 985 F.2d 621, 622, 624 (1st Cir. 1993).  Even so, a releasee retains a limited right under the Federal Rules of Criminal Procedure to confront an adverse witness unless "the court determines that the interest of justice does not require the witness to appear." United States v. Mulero-Díaz, 812 F.3d 92, 95 (1st Cir. 2016) (quoting Fed. R. Crim. P. 32.1(b)(2)(C)).  To make such a determination, a court must balance a releasee's right to confront the witness with "what good cause may exist for denying confrontation in a particular instance."  Fontanez, 845 F.3d at 443.  And constructing that balance requires weighing the

---

[1] The government alleged that the appellant violated two conditions of his supervised release — that he not commit another crime and that he not associate with other convicted felons.  The district court revoked his supervised release based solely on a violation of the former condition.  Because the government does not cross-appeal the district court's determination that it failed to prove the alleged "association" violation, we do not address that violation here.

reliability of the hearsay statement against the reasons proffered by the government for the witness's absence.  See id.

The appellant challenges the revocation of his release on the ground that the district court admitted hearsay evidence without conducting the balancing required by Rule 32.1(b)(2)(C). Specifically, he contends that the district court erred both in finding the hearsay statements reliable and in failing to state explicitly why the interest of justice excused the appearance of the witness.  We address those contentions one by one.

**A**

As the appellant objected below to the reliability of the statements, his first challenge is properly preserved.  We therefore review the district court's reliability determination for abuse of discretion.  See United States v. Taveras, 380 F.3d 532, 536 (1st Cir. 2004).  Under that standard, we examine the district court's legal conclusions de novo, its findings of fact for clear error, and its judgment calls with considerable deference.  See United States v. Canales-Ramos, 19 F.4th 561, 564 (1st Cir. 2021).

A hearsay statement may be deemed reliable when it is supported by sufficient "indicia of reliability." United States v. Marino, 833 F.3d 1, 5 (1st Cir. 2016).  We have held that such indicia may include the detail of the statement, the declarant's consistent recounting of the statement on different occasions, or

other evidence independently corroborating the statement. See id.; United States v. Rondeau, 430 F.3d 44, 48-49 (1st Cir. 2005). Of course, "indicia of reliability" is a protean concept, and the list provided is non-exhaustive. Marino, 833 F.3d at 5. Relatedly, we are mindful that determinations of credibility are the province of the factfinder such that we are "loath to upset" those findings "based on a cold record." United States v. Whalen, 82 F.3d 528, 532 (1st Cir. 1996).

**1**

After a careful review of the record, we find ample evidence to support the hearsay statements tying the appellant to the guns found at the scene. In her statements to both Lightowler and Donovan, Clark was consistent in her description of the black leather pouches in which the guns were encased. Those descriptions were consonant with her statements to the 911 dispatcher that she believed the appellant had two weapons with him, one of them in a black bag. And as excited utterances, those statements to the 911 dispatcher were excepted from the rule against hearsay. See United States v. Estes, 985 F.3d 99, 106 (1st Cir. 2021) (holding that statements of distressed declarant made in 911 call relating to "startling event or condition" was admissible under excited-utterance exception (quoting Fed. R. Evid. 803(2))). Nor was this all: the statements were corroborated by the fact — as noted by the district court — that the guns were found in black pouches on

the appellant's porch, mere "feet from where he was standing when police arrived at the scene." United States v. Franklin, 560 F. Supp. 3d 398, 403 (D. Mass. 2021). Taken together with the appellant's change in demeanor when informed that the dog brought to the scene was trained to detect ballistics, there were sufficient indicia of reliability to vouch for Clark's statements.

The appellant demurs. He asserts that Clark's statements were sparked by her jealousy over his infidelities with other women; that they were inconsistent with, and contradicted by, her 911 call (which reported the existence of drugs not afterward found at the scene); and that she recanted her statements when testifying before the state grand jury.[2]

We find those arguments unpersuasive. This is not a case in which the hearsay statements of an aggrieved partner were uncorroborated by independent evidence. Nor does the fact that Clark reported in her 911 call that the appellant was in possession of drugs, which were not afterward found by police, contradict her statements about the guns: after all, she conveyed to the 911

---

[2] The appellant also argues, somewhat confusingly, that the 911 call contradicts the domestic violence allegations because Clark told Donovan that she called 911 after the appellant shoved her repeatedly, whereas Clark's statements to the 911 dispatcher focused on the appellant's alleged drug dealing and mentioned domestic violence only in passing. But Clark voiced domestic violence allegations of a similar nature to both Donovan and the 911 dispatcher, which would appear to corroborate, not contradict, her statements.

dispatcher her suspicion that the appellant was attempting to hide the drugs while she called. And even though it is true that Clark told the state grand jury that she had not seen the appellant with a black leather pouch, her answer to the prosecutor's question was curtailed. Under the circumstances, that testimony does not necessarily compromise the reliability of her earlier statements. The record shows that she wished to conceal the fact that she had reported the appellant to police because she was fearful of the consequences of having done so. Viewing her testimony in that light, her statements at the scene could reasonably be deemed reliable, notwithstanding her later grand jury testimony.[3]

There is one loose end. Although not directly pertinent to the reliability of Clark's statements, the appellant suggests that the district court erred in failing to consider the possibility that the guns belonged to Clark, her friends, or one

---

[3] Clark also told the grand jury that the March 17 fight had been over another woman and that it had not "turn[ed] physical" but, rather, "was more like trying to get hands off [] belongings and stuff." The appellant appears to argue that the discrepancies between that testimony and her statements to Donovan throw shade on Clark's credibility generally, weakening the reliability of the admitted statements. But it is not clear to us how that testimony bears upon a reliability assessment of the statements about the guns, which, as discussed, were independently corroborated by other evidence. Nor does the testimony necessarily detract from Clark's statements about the frying-pan assault. She was not asked about that assault before the grand jury, yet her grand jury testimony still implies that some physical confrontation occurred during the March 17 fight (albeit of lesser intensity than she had initially conveyed).

of the children. But the district court was not obligated to indulge in such speculation. A finder of fact need not countenance an implausible interpretation of the facts over a probable one. Cf. United States v. Weidul, 325 F.3d 50, 53 (1st Cir. 2003) ("[A] district court's choice between two plausible competing interpretations of the facts cannot be clearly erroneous.").

To say more would be pointless. The bottom line is that we discern no error, and certainly none that is clear, in the district court's crediting of Clark's statements about the appellant's possession of the guns.

**2**

Clark's statements about the frying-pan assault stand on shakier footing, and the appellant's contention that those statements are not supported by other evidence has a patina of plausibility. He contends that the statements are unreliable because there was no evidence of injuries from the assault, and Clark never before reported any incident of domestic violence. Moreover, Donovan never asked the son — despite his presence at the home on March 17 — for his statement about the incident. Finally, an indictment on the assault with a deadly weapon charge was never returned in state court. Even taking all of these facts into account, though, the appellant fails to show that the district court abused its discretion.

To be sure, much of what the appellant argues is missing from the record is the sort of evidence that would have provided compelling substantiating evidence.[4]  Yet, that lack does not diminish the force of the corroboration that is present.  The specificity of Clark's description of the incident weighs heavily in favor of its reliability.  She did not merely offer a vague allegation of violence but, rather, recounted a detailed incident that corresponded to family dynamics observed by Lightowler and Donovan on March 17.  Lightowler described the relationship between Clark and the appellant as "strained" such that she feared for her own safety while in the home; and Donovan observed that, upon his arrival, the son appeared to be protective of his mother, encouraging her to speak with the police.  Moreover, the context of the statement bolsters its reliability.  Clark did not spontaneously volunteer her account of the assault; it was elicited from her when Donovan asked follow-up questions in response to her allegations of domestic violence from that very morning.  Given that evidence, the district court did abuse its discretion in finding Clark's statements reliable.  In the end, we must leave the district court's "findings of fact or conclusions drawn

_____

[4] We do not include within this generality the absence of an indictment.  After all, the lack of an indictment is not necessary as a releasee can be found to have committed a crime in violation of the terms of his conditional release even if he has not "been the subject of a separate federal, state, or local prosecution for such conduct."  USSG §7B1.1, cmt. n.1.

therefrom" undisturbed "unless, on the whole of the record, we form a strong, unyielding belief that a mistake has been made." United States v. Padilla-Galarza, 990 F.3d 60, 73 (1st Cir. 2021) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)).  We arrive at no such conviction here.

## B

The appellant also argues that the district court failed to state explicitly its findings as to the availability of the witness (Clark) and then balance those findings against the reliability of the statements, as required by Rule 32.1(b)(2)(C). As a threshold matter, we must determine whether the appellant forfeited this challenge by not raising it before the district court.

The appellant argues that he preserved the issue by objecting under Rule 32.1 to the lack of live witnesses at his preliminary revocation hearing.  That argument fails, however, because it is incumbent upon an appellant to voice his objection at the appropriate time.  See Fed. R. Crim. P. 51(b); cf. Ira Green, Inc. v. Mil. Sales & Serv. Co., 775 F.3d 12, 24-26 (1st Cir. 2014) (holding that party's failure to request polling of jury after report of verdict waived right notwithstanding party's earlier request); United States v. Meadows, 571 F.3d 131, 146 (1st Cir. 2009) (holding that objection to jury instruction during

- 15 -

charge conference, not renewed after charge delivered, failed to preserve appellate challenge).

Holding the appellant to this sequencing is particularly appropriate here, given the differences between preliminary and final revocation hearings. The preliminary revocation hearing, held before a magistrate judge, probes only whether there is "probable cause to believe that a violation occurred." Fed. R. Crim. P. 32.1(b)(1)(A); see United States v. Colón-Maldonado, 953 F.3d 1, 4 (1st Cir. 2020). At that stage of the proceedings, the defendant's limited confrontation right, under Rule 32.1(b)(1)(B)(iii), is available to him only "upon request." In contrast, at the final revocation hearing, the district court must determine, using a preponderance-of-the-evidence metric, whether the alleged violation occurred. See Colón-Maldonado, 953 F.3d at 3, 5. In that setting, a defendant is afforded a more robust right under Rule 32.1(b)(2)(C) that "entitle[s]" him to appear before the court, to present evidence, and to confront adverse witnesses unless the interest of justice permits their absence. It does not follow, then, that because the appellant advanced an objection at the preliminary hearing under Rule 32.1(b)(1)(B)(iii), he preserved the challenge he raises now under Rule 32.1(b)(2)(C). That objection was heard before a different judge, within a different procedural context, under the auspices of a separate provision of the Criminal Rules, such that it cannot fairly be

said that the objection was "sufficiently specific to call the district court's attention" to the error asserted here.  United States v. Sosa-González, 900 F.3d 1, 4 (1st Cir. 2018) (quoting United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017)).

The appellant has a fallback position.  He argues that — at the final revocation hearing — he preserved his challenge as to availability by objecting to the reliability of the statements. In support, he invokes our decision in Colón-Maldonado, in which we found (within the context of that case) that the appellant's objections to reliability, "even if [they] failed to invoke Rule 32.1's limited confrontation right," nonetheless preserved the appellant's challenge that the admitted statements were too unreliable to prove that he violated the terms of his release. 953 F.3d at 9 n.7.  That ruling, though, tells us nothing as to whether an objection to reliability below preserves a challenge to availability on appeal.[5]  And the federal rules dictate otherwise. To preserve a claim of error, a party must object to the district court's action in a timeous manner and inform the court of the

_____

[5] On a related note, the appellant asserts that because conducting a Rule 32.1(b)(2)(C) balancing test is mandatory, no objection at all is required to preserve an appellate challenge. Such an assertion can be quickly dispatched:  as discussed, a defendant is entitled to a limited confrontation right under Rule 32.1(b)(2)(C), but simply having that right does not excuse the appellant's failure to assert it.  Cf. United States v. Rodríguez, 735 F.3d 1, 11 (1st Cir. 2013) (holding that "even an error with constitutional implications" is subject to plain-error review when not preserved).

- 17 -

"grounds for that objection." Fed. R. Crim. P. 51(b). This "contemporaneous-objection rule" prevents a party from "sandbagging" the court — that is, "remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." Puckett v. United States, 556 U.S. 129, 134 (2009). To permit such hedging of arguments would undercut the principle that the district court — which "is ordinarily in the best position to determine the relevant facts and adjudicate the dispute" — should be afforded an opportunity to consider and resolve the parties' objections. Id.; see United States v. Fox, 889 F.2d 357, 359 (1st Cir. 1989) ("If the objection now raised had been formulated below there would have been an opportunity for the court to consider it and rule accordingly.").

Here, the appellant objected to the reliability of the hearsay statements, so the district court responded by articulating its reasons for finding the evidence reliable. Now — after an unfavorable ruling below — the appellant marshals an availability argument that he previously kept in reserve, and, in doing so, submits that the district court erred in failing to address an argument never presented to it. That is precisely the sort of stratagem anticipated by the contemporaneous-objection rule. We see no reason to depart from the rule and thus find that the appellant forfeited his right to challenge the district court's determination concerning the availability of the witness. Our

review of that challenge is, therefore, only for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

"The plain error hurdle is high." United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989). Under that demanding standard, the appellant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Duarte, 246 F.3d at 60. "The party asserting plain error bears the burden of persuasion" as to all four of these elements. United States v. Pabon, 819 F.3d 26, 33 (1st Cir. 2016); see United States v. Pinkham, 896 F.3d 133, 136-37 (1st Cir. 2018).

The appellant has made no attempt to bear his burden under plain-error review, hazarding all on his contention that he properly preserved the issue. He has therefore waived his challenge here. See Pabon, 819 F.3d at 34.

But even if we were to overlook this waiver, there is no plain error to be found. To begin, we are not persuaded that an error occurred because the record indicates that the district court implicitly conducted the balancing required by Rule 32.1(b)(2)(C). The district court expressed its reasons for finding the statements reliable (ostensibly in response to the appellant's arguments to the contrary) and cited the appropriate legal standard in its written order. See Franklin, 560 F. Supp. 3d at 405 (citing United

- 19 -

States v. Bueno-Beltrán, 857 F.3d 65, 68 (1st Cir. 2017) (rehearsing standard for admission of hearsay evidence under Rule 32.1(b)(2)(C))). In addition, there was a factual basis from which to conclude that the interest of justice did not require Clark to testify in person, as independent evidence bolstered the reliability of the statements and suggested that Clark — a victim of domestic violence — would have feared for her safety if called to testify. We see no reason to presume (absent evidence to the contrary) that an experienced judge, familiar with the legal and procedural contours of revocation proceedings, failed to conduct the balancing test that is a matter of routine under such circumstances.[6]

And — even if we were to assume that the district court erred by failing explicitly to conduct that balancing on the record — any such error was not clear or obvious. Such an error must be "indisputable in light of controlling law." United States v.

---

[6] The appellant argues for the first time in his reply brief that even if the district court implicitly conducted a Rule 32.1(b)(2)(C) balancing, it still abused its discretion because Clark's supposed fear of the appellant had not prevented her from testifying before the state grand jury. According to the appellant, the government's reluctance to call her as a witness stemmed from a concern that she would recant her earlier statements, not some other good cause. Whatever the merits of this argument — and we do not imply that any exist — it has been waived as it was raised for the first time in the appellant's reply brief. See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1991) (explaining that arguments raised for the first time in appellant's reply brief are deemed waived). And insofar as it relates to the first element of our review for plain error, we find it insufficient to prove that the district court wrongly applied Rule 32.1(b)(2)(C).

Mulero-Vargas, 24 F.4th 754, 757 (1st Cir. 2022) (internal quotation marks omitted) (quoting United States v. Rabb, 5 F.4th 95, 101 (1st Cir. 2021)). We have never held that a district court must explicitly state its reasons for finding that the interest of justice militates against the appearance of a witness, even when the parties do not otherwise object to the witness's absence. Nor is there uniform agreement among the other courts of appeals as to whether an explicit balancing under Rule 32.1(b)(2)(C) is required under all circumstances. Compare United States v. Lloyd, 566 F.3d 341, 345 (3d Cir. 2009) ("[W]e reject a per se rule that a district court's failure to explicitly address cause amounts to reversible error in all cases.") with United States v. Jordan, 742 F.3d 276, 280 (7th Cir. 2014) (holding that Rule 32.1(b)(2)(C) "requires a district court in a revocation hearing explicitly to balance the defendant's constitutional interest in confrontation and cross-examination against the government's stated reasons for denying them"). It cannot be said, then, that the district court's implicit balancing was "contrary to existing law" such that it was a clear or obvious error. Rabb, 5 F.4th at 101.

## III

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed**.

- 21 -