# United States Court of Appeals
## For the First Circuit

No. 24-1010

UNITED STATES OF AMERICA,

Appellee,

v.

GUILLERMO VASQUEZ-LANDAVER, a/k/a Jute,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Rikelman, Circuit Judges.

Robert C. Andrews, with whom Robert C. Andrews Esquire P.C. was on brief, for appellant.
Lindsay B. Feinberg, Assistant United States Attorney, with whom Darcie N. McElwee, United States Attorney, was on brief, for appellee.

February 19, 2025

**SELYA**, **Circuit Judge**. Defendant-appellant Guillermo Vasquez-Landaver, while on supervised release, violated various court-imposed conditions. He now challenges the reliability of the evidence supporting one of those findings. We affirm.

**I**

We first rehearse the relevant facts (which are largely undisputed) and travel of the case. In 2016, the defendant was sentenced to 120 months of imprisonment, to be followed by sixty months of supervised release, for crimes that he committed as a member of the criminal gang MS-13. Along with his sentence, the court imposed several conditions of supervised release. Among other things, the defendant was to abstain from drugs and alcohol, refrain from committing another crime, report to his probation officer as directed, and remain in the District of Maine unless he received approval to travel outside the district.

The defendant served his prison sentence and his supervised release term commenced in February of 2020. He did not comply with the release conditions. On September 18, 2023, his probation officer submitted a petition to the district court seeking to revoke the defendant's supervised release. The petitioner alleged that between 2020 and 2023, the defendant violated his release conditions in a number of ways: he left Maine without permission, used illegal drugs and alcohol, failed to report to his probation officer, and operated a motor vehicle while

intoxicated.[1]  It also alleged that on October 20, 2021, the defendant violated state and federal laws when he "propositioned" a woman in a parking lot and "asked her if she liked cocaine" while he was in the possession of that drug.

On December 18, 2023, the district court held a hearing on the petition.  The defendant admitted to all of the violations except for the one based on the events of October 20, 2021.  He also admitted to all of the events described in the petition.  He disputed, however, the "legal consequences" of the events of October 20.

The government proffered three witnesses to tell the tale of the events of October 20.  That day, a detective from the Westbrook, Maine police department responded to a 911 call from a local motel.  The caller reported that a woman (the complainant) was distressed because a man — later determined to be the defendant — had propositioned and harassed her in the motel parking lot.

The detective testified that he arrived at the motel and spoke with the complainant, who was "crying and visibly shaking." She reported that the defendant had approached her in the parking lot, told her that she was pretty, and asked her on a date.  He also asked her if she liked cocaine.  He then sought her phone

---

[1] Although the record is not crystal clear, it appears that the defendant was placed on bail after being charged with operating under the influence.  In one way or another, he was subject to state bail conditions by October of 2021.

- 3 -

number and, upon receiving it, called her phone to ensure that she had given him the correct number.

After hearing this account, the detective approached and spoke with the defendant who was sitting in his Jeep in the motel parking lot. The detective confirmed that the defendant was on bail and that his bail conditions authorized random searches for drugs or alcohol without reasonable suspicion or probable cause. Based on the complainant's narrative, including the mention of cocaine, the detective decided to search the defendant's person and vehicle. In the trunk of the Jeep, he found a plastic bag inside the pocket of a jacket. The plastic bag contained seven smaller plastic bags, each containing white powder that the detective suspected was cocaine. The detective testified that the smaller bags were "what's called a Dominican tie," which is "basically the corner of a sandwich bag, the drugs are placed in the corner and ripped off and then a knot is tied in." The detective testified that such Dominican ties are "fairly typical of drug packaging" and consistent with distribution.

The detective arrested the defendant and took the plastic bag into evidence. A field test of the white powder tested presumptively positive for cocaine. The plastic bag containing the seven smaller bags was weighed and registered 7.69 grams.[2] The

_____

[2] The detective testified that the drugs were not unpackaged before being weighed because presumptive drug field tests can be

- 4 -

detective testified that, in his training and experience, the weight of the plastic bags themselves — as opposed to their contents — was relatively small. He estimated that each smaller bag likely contained around one gram of cocaine because typically drugs packaged for sale are packaged "right around the same weight" in "whole amounts."

Another officer who arrived on the scene while the detective was speaking with the defendant also testified at the revocation hearing. He, too, testified that the Dominican ties found in the defendant's possession were "indicative of distribution," were packaged to be "roughly the same size," and that the weight of the plastic bags themselves (as opposed to the cocaine therein) was only "a small portion" of the gross weight.

The defendant did not contest much of the testimony presented at the hearing. For example, he did not dispute that he possessed cocaine. Nor did he deny other facts, such as the fact that he asked the complainant if she liked cocaine. But despite those broad areas of agreement, he steadfastly maintained that the evidence was insufficient for the court to determine the weight of the cocaine itself (as opposed to the combined weight of the cocaine and its packaging).

_____

used while drugs are still in their packaging and because, due to the dangers posed by street drugs such as fentanyl (even small amounts of which can be fatal), officers typically do not unpackage drugs.

At the conclusion of the hearing, the district court found that the defendant had violated the conditions of his release by possessing cocaine with the intent to distribute. The district court reasoned that the defendant had offered the complainant cocaine, which suggested that he was prepared to supply it to her either for or on a potential date. It also found that the individual-sized packaging and number of packages were indicative of distribution.

Separately, the district court found that Maine law permitted the defendant's intent to distribute to be inferred from his possession of more than two grams of cocaine. In Maine, "[p]roof that [a] person intentionally or knowingly possesses" more than two grams of cocaine "gives rise to a permissible inference" that "the person is unlawfully furnishing" cocaine. Me. Rev. Stat. Ann. 17-A, § 1106(3). The district court found that the defendant possessed more than two grams of cocaine, reasoning:

> It's common sense that lightweight plastic bags, which [the bags here] clearly appeared to be, aren't going to be over five grams and the drugs under two grams. . . . I believe that drugs are distributed in multiple little bags in a weight that . . . the seller intends to be consistent from bag to bag, and that would be seven grams in this case, one gram each, with the rest of the weight either being slight increases in the weight of the drugs or consistent with the weight of the plastic, though I don't think even the plastic would weigh .69.

The court drew the permissible inference under state law to find that the defendant had the requisite intent to distribute.

After determining that the defendant had violated Maine law, see Me. Rev. Stat. Ann. 17-A, § 1106, the district court concluded that this state-law offense constituted a violation of the condition barring the commission of another crime. The sentencing guidelines place this violation at Grade A.[3] See USSG §7B1.1(a). In conjunction with the defendant's criminal history category, the district court calculated an advisory guideline range of fifty-one to sixty-three months' imprisonment. The court proceeded to revoke the defendant's supervised release and to impose a sixty-month term of immurement.

This timely appeal ensued. In it, the defendant challenges the district court's finding that he committed the Grade A violation on his term of supervised release.

## II

We review a district court's decision to revoke supervised release for abuse of discretion. See United States v.

---

[3] Supervised release violations are classified as Grade A, B, or C. See USSG §7B1.1(a). Grade A violations "are the most serious." United States v. Teixeira, 62 F.4th 10, 16 n.1 (1st Cir. 2023). They extend to conduct that constitutes "a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a controlled substance offense." USSG §7B1.1(a)(1). The state law violation at issue here is punishable by a term of imprisonment of more than one year. See Me. Rev. Stat. Ann. 17-A, §§ 1106(1-A), 1102(1)(F), 1604(1)(C).

Rodriguez, 919 F.3d 629, 634 (1st Cir. 2019). We remain "mindful, though, that a material error of law always amounts to an abuse of discretion." Id. Within this rubric, we examine the district court's factual findings — including its finding of a violation of supervised release — for clear error. See United States v. Teixeira, 62 F.4th 10, 24 (1st Cir. 2023). The clear error standard requires that, in reviewing the record as a whole, "we form a strong, unyielding belief that a mistake has been made." United States v. Franklin, 51 F.4th 391, 399 (1st Cir. 2022) (quoting United States v. Padilla-Galarza, 990 F.3d 60, 73 (1st Cir. 2021)).

**III**

The defendant submits that the district court relied on untrustworthy evidence to find that he intended to furnish cocaine. He says that because the government offered no evidence that specifically segregated the weight of the cocaine from its packaging, the district court was not at liberty to determine the weight of the raw cocaine (as opposed to the weight of the packaged cocaine). Thus, the district court clearly erred when it found that the cocaine itself weighed more than two grams. And without a finding that the defendant possessed more than two grams of cocaine, the court could not use the Maine statute to infer intent to furnish. See Me. Rev. Stat. Ann. 17-A, § 1106(3)(B). Stripped

- 8 -

of the statutory inference, the remaining circumstances of the interaction were insufficient to show intent.

We begin with a key fact on which this issue turns: whether the district court clearly erred when it found that the defendant possessed more than two grams of cocaine. The defendant characterizes the district court's finding on this issue as "little more than a guess." Because the drugs were weighed while still in their packaging, the defendant suggests that the district court had no reliable way to determine their actual weight. This suggestion, though, is belied by the record.

The district court heard the testimony of two trained law enforcement officers, each of whom testified that the weight of the plastic packaging was merely a small fraction of the total measured weight. The court credited the officers' testimony that each of the seven small bags contained around one gram of cocaine such that the seven bags plus their lightweight packaging totaled 7.69 grams in weight. Crediting this testimony and making use of its own "common sense," the district court reasonably inferred that the bags themselves "aren't going to be over five grams and the drugs under two grams." See, e.g., Teixeira, 62 F.4th at 19 ("A judge, sitting as a factfinder, is allowed — indeed, obliged — to bring to bear his own knowledge and experience in evaluating the evidence admitted in the case.").

This factfinding, though inferential, was a far cry from clear error. "The decision to credit [a law enforcement officer]'s testimony [i]s quintessentially a decision for the factfinder." Id. at 24. Here, moreover, the court heard no evidence to suggest that the cocaine weighed less than two grams while the plastic packaging weighed over five grams. "A finder of fact need not countenance an implausible interpretation of the facts over a probable one." Franklin, 51 F.4th at 398. Inasmuch as the officers' "testimony is plausible on its face and not inconsistent with the other information that is known about the events in question, the district court's finding warrants our approbation." United States v. Romain, 393 F.3d 63, 69 (1st Cir. 2004). And even were we prepared to abandon common sense and deem it plausible that the cocaine comprised only one-fourth of the package's total weight, "[a] district court's choice between two plausible, but conflicting, interpretations of a factual scenario cannot amount to clear error." United States v. Carrasco, 540 F.3d 43, 49 (1st Cir. 2008) (quoting Valentin v. Hosp. Bella Vista, 254 F.3d 358, 367 (1st Cir. 2001)). Accordingly, we discern no clear error in the district court's finding that the defendant possessed more than two grams of cocaine on October 20, 2021.

In Maine, the possession of more than two grams of cocaine "establishes a presumption of furnishing." State v. Deering, 706 A.2d 582, 584 (Me. 1998) (emphasis omitted) (citing

- 10 -

Me. Rev. Stat. Ann. 17-A, § 1106(3)). This presumption "eases the [government]'s burden of establishing the intent element of the crime of possession with intent to transfer." Id. at 584-85 (emphasis omitted). The district court appropriately applied the presumption, and the defendant offered no evidence to rebut it. And aside from the amount of cocaine, the other record facts support the district court's finding that the defendant possessed cocaine with the intent to furnish. The defendant inquired if the complainant liked cocaine as he asked her for a date — and he did so while in possession of seven small bags of cocaine that were packaged for individual distribution. The district court inferred from these facts that the defendant "was offering" cocaine to the complainant, because "he wouldn't have [asked] her [do] you like [cocaine] if he wasn't prepared to supply it for the date or on the date." We do not disturb "findings of fact or conclusions drawn therefrom" unless our review of the entire record leaves us with the firm conviction that a mistake has been made. Padilla-Galarza, 990 F.3d at 73 (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)). Here, we are left with no such conviction: under the circumstances, it is altogether reasonable to infer that the defendant was prepared to furnish the complainant with cocaine.[4] See State v. Baker, 409 A.2d 216, 219

_____

[4] We are not persuaded by the defendant's remaining arguments to the contrary. As to his suggestion that the scale may have

- 11 -

(Me. 1979) (considering amount of drugs and packaging indicative of distribution in drawing inference of intent to furnish).

Finally, this conclusion is bolstered by reason of the applicable burden of proof. The district court may find a violation of a supervised release condition as long as the government proves that violation by a preponderance of the evidence. See Rodriguez, 919 F.3d at 637. We are confident that the government carried that burden here.

**IV**

We need go no further. The district court's determination that the defendant intended to furnish cocaine and, thus, that he violated a condition of his supervised release withstands the defendant's attack. The judgment of the district court is, therefore,

**<u>Affirmed</u>**.

---

been faulty, no evidence in the record supports that view. And as to his contention that the packaging suggests personal use, we reiterate that — under the clear error standard — a competing plausible inference is insufficient to warrant reversal.