# United States Court of Appeals
## For the First Circuit

No. 25-1472

UNITED STATES OF AMERICA,

Appellee,

v.

ANTONIO CAMILLO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Mark W. Shea, with whom Jean C. LaRocque and Shea and LaRocque, LLP were on brief, for appellant.

Karen L. Eisenstadt, Assistant United States Attorney, with whom Leah B. Foley, United States Attorney, was on brief, for appellee.

January 27, 2026

**LYNCH**, **Circuit Judge**.  Antonio Camillo appeals from the revocation of his supervised release, presenting two arguments outlined below.  The district court found that he had violated a condition of his release by committing the state crime of vandalism under Mass. Gen. Laws ch. 266, § 126A.

Camillo contends that the finding of a violation of his supervised release was based solely on the unreliable hearsay statements of a non-testifying witness, purportedly in violation of Federal Rule of Criminal Procedure 32.1(b)(2)(C).  He also challenges the factual finding that the prosecution had shown he committed all of the elements of the state crime of vandalism.  He argues that no evidence was introduced as to the elements of malice or wantonness, as to who owned the property, and as to the extent of damage to the apartment door he vandalized.  Camillo's arguments mischaracterize the record and the law and are without merit.  We affirm.

## I.

We review the district court's decision to revoke Camillo's supervised release for abuse of discretion.  See United States v. Millette, 121 F.4th 946, 951 (1st Cir. 2024), cert. denied, 145 S. Ct. 1939 (2025).  We review legal questions de novo and the district court's factual findings, including its finding of a violation of supervised release, for clear error.  Id.  Clear error review is "exceedingly deferential."  Id. (quoting United

States v. Matos, 328 F.3d 34, 39 (1st Cir. 2003)).  We will find that a district court abused its discretion only when "left with a definite conviction that no reasonable person could agree with the judge's decision."  Id. (internal quotation marks omitted) (quoting United States v. McCullock, 991 F.3d 313, 317 (1st Cir. 2021)).  We discern neither legal error nor clear error in the district court's factual findings.[1]

## II.

The material facts in the record relevant to this appeal are largely undisputed.

### A.

**Prior convictions and supervised release terms**

We start by providing relevant background preceding the supervised release violation at issue.  In February 2019, Camillo waived indictment and pled guilty to an information charging one

---

[1]  Camillo does not dispute that the finding of a violation of supervised release generally receives clear error review but urges de novo review on the theory that he raises a sufficiency challenge to the evidence that he committed vandalism.  This court has once stated that such sufficiency challenges are reviewed de novo.  See United States v. Rondeau, 430 F.3d 44, 49 (1st Cir. 2005) (reviewing de novo, while viewing the facts in the light most favorable to the government, whether there was sufficient evidence to conclude that the defendant committed an assault or illegally possessed a firearm).  In other cases, this court has stated that sufficiency challenges to findings of supervised release violations are reviewed for clear error.  See United States v. Frederickson, 988 F.3d 76, 88 (1st Cir. 2021).  Because Camillo's challenge fails regardless of the standard applied, we need not resolve that tension here.

count of conspiracy to distribute and to possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846, and one count of distribution of and possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).[2]  In May 2019, the district court sentenced Camillo to thirty-four months' imprisonment, followed by three years of supervised release.  He began serving his term of supervision in April 2021.  In June 2023, the district court revoked Camillo's supervised release for multiple violations and sentenced him to five months' imprisonment, followed by one year of supervised release.  In August 2024, the district court extended Camillo's supervised release by eighteen months for additional violations.

**B.**

**The events of January 26, 2025, leading to the revocation of supervised release**

On January 26, 2025, Lowell police officers Aisling O'Connor and Brian McManus responded to a 911 call reporting a domestic disturbance at an apartment in Lowell.  There they met Camillo's wife, Karina Rajotte.  She said that during an argument with Camillo, she became fearful and ran to the kitchen to get a knife for protection, but he was already there.  As she tried to move past him, he threw his elbow back, striking the right side of

_____

[2]  The same federal district court judge presided over all federal district court proceedings relevant to this appeal.

her face. She told Camillo to leave the apartment and he did so, and she locked the door behind him because she was the only one with a key. She then heard Camillo banging on and kicking the door, damaging the door frame and causing the door to open. Camillo went inside, took Rajotte's cell phone, and ran out.

On January 27, 2025, criminal complaints were filed in state court charging Camillo with vandalism of the apartment door and two other state crimes.[3] That same day, federal Probation filed a petition seeking revocation of Camillo's supervised release based on the allegation that he had committed new criminal offenses arising from the January 26 incident.[4] On March 27, 2025, the state charges were dismissed for failure to prosecute after Rajotte asserted the marital privilege and declined to testify.

**C.**

**Evidence at the district court revocation hearings**

The district court held an initial revocation hearing on May 7, 2025. At that hearing, the prosecution offered documentary evidence, including Officer O'Connor's January 26 police report,

---

[3] Camillo was also charged with assault and battery on a family or household member, and larceny of property under $1,200.

[4] On April 1, 2025, after Camillo was transferred to federal custody, a magistrate judge released him subject to conditions that included no contact with Rajotte. That same day, he was arrested in Concord for driving on a suspended license, and Rajotte was in the car. Probation amended the revocation petition to add the April 1 driving offense to Violation 1 and to add a separate violation of the no-contact bail condition as Violation 2.

which identified the owner of the damaged property, and a handwritten affidavit from Rajotte dated January 28, 2025, which reinforced her statements as recounted in the police report and stated in part that "[Camillo] kick my House Down."[5]

Camillo, through counsel, objected to the admission of the police report and the January 28 affidavit under Fed. R. Crim. P. 32.1(b)(2)(C), arguing at the hearing that he was entitled to confront and cross-examine Rajotte and that her out-of-court statements lacked sufficient indicia of reliability. The district

---

[5] Rajotte's January 28 affidavit stated in its entirety:

> Sunday morning I woke up was In The bathroom venting to my self My Husband came into The Bathroom and said something i cant Recall But we got into a arguement I asked him to give me space and He couldn't Respect what I asked He was verbally abusing me he also assalted me I kept asking him to Leave when He Finally left I shut the Door and lock it He kick my House Down, and I made a Police Report & EMT check me out.

That affidavit was submitted in support of a state abuse prevention order issued for Rajotte after the January 26 incident.

The prosecution also introduced the criminal complaint arising from the April 1 driving offense. Camillo introduced three defense exhibits: an email string between Rajotte and defense counsel, including a May 6, 2025 email from Rajotte stating that she was living with Camillo at the time of the January 26 incident; a neuropsychological evaluation of Rajotte; and a police report reflecting a March 2020 incident during which Rajotte allegedly threatened her mother with a knife. On the second day of the revocation hearing, Camillo submitted a handwritten affidavit from Rajotte dated May 10, 2025, which stated that she did not know whether Camillo intentionally hit her with his elbow during the January 26 incident. Camillo also introduced a letter of support and Massachusetts pattern jury instructions on three of the four charged offenses.

court continued the hearing to consider the defense's arguments and give the government an opportunity to produce the responding officer as a witness.

When the hearing resumed on May 12, 2025, the prosecution called Officer O'Connor to testify. Over Camillo's renewed hearsay objection, the district court permitted Officer O'Connor to recount Rajotte's statements describing the incident. Officer O'Connor also testified to her own observations at the scene, including her observation that the "[apartment door] frame on the left side was all cracked and broken."

After hearing testimony and argument, the district court orally made its rulings of law and findings of fact at the hearing. The court first stated that it had read and reviewed "the cases that both sides wanted [it] to." In light of Rajotte "invoking marital privilege not to testify in the state court case," the court found that "it's in the interest of justice that Ms. Rajotte not appear" under Rule 32.1(b)(2)(C). The court further found that Rajotte's hearsay statements admitted through Officer O'Connor were "appropriately admitted" and that the officer's "observations of the damage to the door frame . . . corroborate, at least in part, what Ms. Rajotte said about the course of events that occurred." The court then found that Camillo "returned [to the apartment] and did damage that the officer could still observe to the apartment door to get the phone back." Turning to the

- 7 -

elements of vandalism, the court concluded that "there has been sufficient evidence, at least by a preponderance, that [Camillo] did damage the door" and that "it was done so intentionally." The court further found that Camillo acted both "willfully with malice" and "wantonly," explaining that "the evidence here supports both," and that his conduct was "certainly wanton[] by acting recklessly or with indifference to the fact that his conduct would cause substantial injury or destruction of property."[6]

Treating the violation as a Grade C violation,[7] the district court revoked Camillo's supervised release and imposed a sentence of seven months' imprisonment, followed by eighteen months of supervised release.

**III.**

Camillo first argues that the district court abused its discretion by revoking his supervised release, asserting that the

---

[6] The district court found that the prosecution had not shown the intent required for assault and battery on a household or family member. And because the vandalism finding independently supported revocation of Camillo's supervised release, the court declined to reach the remaining alleged criminal offenses.

[7] "U.S.S.G. § 7B1.4(a) provides guideline ranges for imprisonment after revocation of supervised release based on a defendant's violation grade and criminal history category." United States v. Dudley, 100 F.4th 74, 85 n.9 (1st Cir. 2024). Violations are classified as Grade A, B, or C, with Grade A violations being "the most serious." United States v. Vasquez-Landaver, 128 F.4th 358, 361 n.3 (1st Cir.) (quoting United States v. Teixeira, 62 F.4th 10, 16 n.1 (1st Cir. 2023)) (citing U.S.S.G. § 7B1.1(a)), cert. denied, 145 S. Ct. 2767 (2025).

factual finding was based solely on purportedly unreliable hearsay from Rajotte, in violation of Fed. R. Crim. P. 32.1(b)(2)(C) and the Due Process Clause of the Fifth Amendment. That argument mischaracterizes the record.

The admitted hearsay was, contrary to defendant's argument, not the sole basis for the district court's opinion; further, Rajotte's statements were sufficiently reliable. The court's ruling in substantial part credited Officer O'Connor's firsthand observations, including her testimony that the apartment door frame was cracked and broken. The officer's observations corroborated Rajotte's account describing how the damage occurred. Camillo does not dispute that the door was damaged, that the damage was observable, or that Officer O'Connor personally observed it.

To the extent the district court also considered Rajotte's statements, which were consistent across the police report and her January 28 affidavit, Camillo fares no better. In a supervised release revocation hearing, the district court is not bound by the Federal Rules of Evidence, and the releasee does not enjoy a Sixth Amendment right to confront adverse witnesses. United States v. Franklin, 51 F.4th 391, 396 (1st Cir. 2022). A releasee does "retain[] a limited right under [Rule 32.1(b)(2)(C)] to confront an adverse witness unless 'the court determines that the interest of justice does not require the witness to appear.'" Id. (quoting United States v. Mulero-Díaz, 812 F.3d 92, 95 (1st

Cir. 2016)). The court must "balance a releasee's right to confront the witness" against "what good cause may exist for denying confrontation in a particular instance," which "requires weighing the reliability of the hearsay statement against the reasons proffered by the government for the witness's absence." Id. (second quoting United States v. Fontanez, 845 F.3d 439, 443 (1st Cir. 2017)).

The district court expressly conducted that balancing at the revocation hearing. It concluded that the interest of justice did not require Rajotte to appear -- a determination Camillo does not challenge -- and found her statements sufficiently reliable. The court's reliability finding was well supported by the record. Rajotte gave a consistent version of events in her sworn January 28 affidavit, and her account was corroborated by Officer O'Connor's testimony. See United States v. Marino, 833 F.3d 1, 6 (1st Cir. 2016) (crediting hearsay statements that "consistently articulated the same version of events"); United States v. Dudley, 100 F.4th 74, 83 (1st Cir. 2024) (crediting hearsay statements that were "independently corroborated by other evidence"). Camillo's suggestion that Rajotte had motives to lie is unpersuasive in light of the consistency of her accounts relating to the broken door and the independent corroboration. On this record, an alleged motive to lie does not, on its own, overcome the district court's finding

that the witness's statements were sufficiently reliable.[8]  See Franklin, 51 F.4th at 397 ("[D]eterminations of credibility are the province of the factfinder such that we are 'loath to upset' those findings 'based on a cold record.'" (quoting United States v. Whalen, 82 F.3d 528, 532 (1st Cir. 1996))).  Nor does it matter whether Rajotte's statements were "testimonial" because, as noted, the Confrontation Clause does not apply in supervised release revocation proceedings.  See id. at 396.

Camillo next argues that the district court erred in finding by a preponderance of the evidence that he committed the crime of vandalism under Massachusetts law.  He does not dispute in his briefing, nor did he at oral argument, that he was the person who kicked in the apartment door.  Instead, he challenges the prosecution's proof of ownership, mental state, and extent of damage.  His argument misapprehends both the record and the law.

A district court may revoke a defendant's supervised release upon finding, by a preponderance of the evidence, that the defendant violated a condition of his release.  United States v.

---

[8]  As evidence of Rajotte's purported bias, Camillo points to Officer O'Connor's police report, in which the officer described Camillo as Rajotte's ex-husband, despite the fact that the two were married.  At the revocation hearing, however, Officer O'Connor testified that the use of the term ex-husband reflected her interpretation of what Rajotte had told her, not Rajotte's own words.  Camillo also argues that it was error to conclude that the hearsay was reliable because Rajotte had recanted a statement about whether Camillo was living with her and because Rajotte had mental health issues.  These do not undercut the reliability finding.

- 11 -

Abercrombie, 162 F.4th 47, 58 (1st Cir. 2025). Here, Camillo's supervised release prohibited him from committing a new criminal offense.

Under Mass. Gen. Laws ch. 266, § 126A, "[w]hoever intentionally, willfully and maliciously or wantonly, paints, marks, scratches, etches or otherwise marks, injures, mars, defaces or destroys the real or personal property of another" is guilty of the crime of vandalism.[9] For the reasons articulated by the district court, the evidence was sufficient to establish the elements of vandalism by a preponderance of the evidence.

Camillo argues that the district court erred because the prosecution failed to prove who owned the apartment door. That argument misstates the law. To establish the crime of vandalism, the prosecution was required to show only that the damaged property was owned or possessed by someone other than Camillo. See Mass.

---

[9] Under the state district court model jury instruction, the crime of vandalism requires proof that (1) the property was painted, marked, scratched, etched, injured, marred, defaced, or destroyed; (2) the defendant did so intentionally; (3) the defendant did so willfully with malice, or wantonly; and (4) the property was owned or possessed by someone other than the defendant. See Massachusetts Criminal Model Jury Instructions for Use in the District Court, Instruction 8.250, at 1 (May 2017). A person acts "intentionally" if he acts "consciously and deliberately, rather than by accident or as the result of negligence." Id. A person acts "willfully" if he "intends both the conduct and its harmful consequences," acts with "malice" if the act "is done out of cruelty, hostility or revenge," and acts "wantonly" by "acting recklessly or with indifference to the fact that [his or her] conduct would probably cause substantial injury to, or destruction of, another's property." Id. at 2.

- 12 -

Gen. Laws ch. 266, § 126A. The record easily satisfied that requirement. The police report that was admitted into evidence did identify the property owner -- the Caleb Foundation. Indeed, Camillo never contended at the revocation hearing that the door was his property, and he does not make that contention on appeal. Nothing in the record suggests that he owned or possessed the apartment door that he forcibly kicked in. His fallback argument raised in his reply brief -- that the prosecution waived reliance on the ownership evidence by failing to emphasize it at the revocation hearing -- is equally baseless. The district court expressly stated that it had received the police report, which identified the owner of the damaged property, and the prosecution explicitly relied on that report to show a supervised release violation. See United States v. Teixeira, 62 F.4th 10, 25 (1st Cir. 2023) ("A district court need not articulate its conclusions as to every jot and tittle of evidence in making a determination as to a supervised release violation, and the fact that the court did not do so . . . cannot compel a finding of clear error.").

Further, the record contains more than adequate evidence that Camillo acted with malice. Kicking open a locked apartment door with sufficient force to damage the door and its frame, after being excluded from the apartment, amply supports the district court's malice finding. The court separately found that Camillo acted wantonly by disregarding the obvious risk that forcing entry

would cause substantial damage to the door.  Camillo does not meaningfully contest that alternative finding on appeal.

## IV.

For the reasons described above, the district court's judgment is **<u>affirmed</u>**.